JOHN B. LEATHERS v. WM. J. GRAY.

*Will—Devise—"Rule in Shelley's Case."*

1. Where a testator employs words having a well known or technical meaning in the disposition of his estate, that construction will be given them unless it can be seen from the instrument itself, that he used them in a different sense; and if he used such words as will bring the devise within a settled rule of law, that rule must prevail, though it conflict with the real intention of the testator.

2. A devise to P, "during her natural life, and after her death to the begotten heirs or heiresses of her body," vested in P an absolute estate in fee simple, under the rule in Shelley's case.

3. The opinion of this Court, delivered in this case, reported in 96 N. C., 548, is overruled.

DAVIS, J., dissenting.

*Messrs. John W. Graham, J. B. Batchelor* and *John Devereux, Jr.,* for petitioner.
*Messrs. John Manning* and *A. W. Graham, contra.*

MERRIMON J. This is an APPLICATION to *rehear* the case of *Leathers* v. *Gray,* reported in the 96th N. C., 548. The will of Joseph Armstrong, deceased, a clause of which was interpreted in that case, was executed on the 23d day of May, 1839, and the testator having died in the meantime, it was proven in 1840.

The following is a copy of the clause in question of this will: "I also give and bequeath to my son, James W. Armstrong, the following property, to be received as soon as convenient, after the death or marriage of his mother, Peggy Armstrong, viz: One half of three tracts of land, all lying on the waters of Flat River. The first is the tract my father lived and died on, containing 220 acres; the second is the tract that I bought from Henry Berry, containing 17 acres, and the third is a tract that I bought from my brother, William Armstrong, containing 216 acres," and also "*I give and bequeath to my daughter, Parthenia Leathers, during her natural life, and after her death to the begotten heirs or heiresses of her body forever,* one-half of the three tracts of land, all lying on the waters of Flat River," these tracts being the same above designated. This Court in interpreting the last recited clause decided that Parthenia Leathers took but a life estate in the lands devised to her, and that her children took and were entitled to the remainder in fee therein.

The petitioner in this application, who is the defendant in the action, assigns error and contends that the words of the clause, "*and after her death to the begotten heirs or heiresses of her body forever,*" are words of limitation, and not words of purchase, and therefore Parthenia Leathers took the absolute fee-simple estate in one-half of the lands so devised, and the same passed by her deed to the petitioner.

It is conceded that at the time the will before us became operative it was a settled rule of law, prevailing in this State that, whenever the ancestor of any gift or conveyance took an estate of freehold—an estate for life—and in the same gift or conveyance an estate is limited either mediately or immediately to " his heirs," or to the " heirs of his body," as a class, to take in succession as heirs to him, such words are words of limitation of the estate, and convey the inheritance—the whole property—to the ancestor, and they are not words of purchase. That is, in such case, the heir would take by

descent and not by purchase, the ancestor would take the absolute property—the whole estate—with the right and power to dispose of it in any lawful way. Shelley's Case, 1 Coke Report, 104; 2 Bl. Com., 243; 2 Min. Inst., 241, 242; 2 Wash. R. P., 553; *Davidson* v. *Davidson,* 1 Hawks, 163; *Sanders* v. *Hyatt,* Id., 247; *Ham* v. *Ham,* 1 D. & B. Eq., 598; *Allen* v. *Pass,* 4 D. & B., 77; *Floyd* v. *Thompson,* Id., 479; *Hollowell* v. *Kornegay,* 7 Ired., 261; *Weatherly* v. *Armfield,* 8 Ired., 25; *Folk* v. *Whitley,* Id., 133; *King* v. *Utley,* 85 N. C., 59; *Mills* v. *Thorne,* 95 N. C., 362.

But it is seriously contended that this rule, commonly called "*The rule in Shelley's case,*" has no proper application to the clause of the will under consideration, because it sufficiently appears that the words thereof, "begotten heirs or heiresses of her body," were not used in a strict technical sense, but to imply simply the children, male or female, or both, of Parthenia Leathers, in which case her children would take as purchasers. We accepted this view as the correct one, giving effect to the intention of the testator, and made the decision, the correctness of which is now called in question. But after hearing the case re-argued, and having given the question raised much further consideration, we are of opinion that, although the intention of the testator may have been—no doubt was—such as we declared it to be, he failed to express his purpose consistently with a settled rule of law, which it is our duty to uphold and enforce.

When a testator employs words and phrases to express his intention in the disposition of his property, by will, that have a well known legal or technical meaning, he must be deemed to have used them in such sense in defining and limiting the estate disposed of, unless he shall, in some appropriate way, to some extent, to be seen in the will, have qualified or used them in a different sense. And so, also, if the use of such words bring his intention so expressed,

within a settled rule of law, the latter must prevail, although the effect may be to disappoint the real intention of the testator.

Otherwise technical words would have no certain meaning or effect, and the rule of law would be subverted in order to effectuate the real intention of the testator, unexpressed or imperfectly expressed. It is said, however, that the real intention of the testator must have effect, and so it must, but the real intention recognized and enforced by the law, is that expressed in the will, and this is to be ascertained by a legal interpretation of the language employed to express it.

Moreover, a testator cannot ignore, displace and set at naught a rule of law applicable to and affecting the disposition of his property by his will, in whole, or in part—the rule of law must prevail—he must make his disposition of his property, as allowed by and consistently with it; it determines the meaning and effect of his will, and its several parts, by the language employed in it, and not by what is intended, but not expressed, or not sufficiently expressed. He must express his intention in words appropriate and sufficient to express his real meaning, and if he employs technical legal words the technical meaning must prevail, unless the same shall be qualified or modified by super-added words in the will.

The material part of the clause in question of the will before us is, "I give and bequeath to my daughter, Parthenia Leathers, during her natural life, and after her death to the begotten heirs or heiresses of her body forever, one-half of the three tracts of land," &c. Omitting, for the present, from this clause the word "heiresses," the words thereof, "heirs * * * of her body," have a technical legal meaning, and it is clear—nothing else appearing—created an estate tail in the devisee named, which was converted by the statute (Acts 1784, Ch. 204, § 5; *The Code,*

§ 1325) into an estate in fee simple. That statute provides that " every person seized of an estate tail shall be deemed to be seized of the same in fee simple," &c., and applies to the will under consideration. *Hollowell* v. *Kornegay, supra; Weatherly* v. *Armfield, supra; Folk* v. *Whitley, supra.*

If there were words in the context clearly showing that the testator did not use the words " heirs  *  * of her body " in their technical sense, but to imply children of the devisee, then in that case these words would be treated as words of purchase, and the devisee would have taken but a life estate, and her children would have taken the remainder. But, upon further reflection and scrutiny, we think there are no words of the context that can fairly, in view of numerous decisions of this and other Courts, be construed as having such qualifying effect. Super-added words to have such effect, must have appropriate pertinency in meaning and bearing; the purpose to qualify and change the technical meaning of language used must appear with reasonable certainty. It seems to us that the words " or heiresses " used in the clause referred to, cannot have such, or any qualifying effect. In their direct connection the next preceding word, " heirs," imply and embrace " heiresses," and all they mean or can mean, in their connection—they are mere expletives and serve no useful purpose. The phrase, " her heirs or heiresses," means no more than that the testator devised the land to his daughter and the heirs of her body, male and female, and the course of descent is not changed in any degree from what it would be if the word " heiresses " did not appear, nor does that word suggest or imply children of the testator any more than the word " heirs." *Donnell* v. *Mateer,* 5 Ired. Eq., 7; *Coon* v. *Rice,* 7 Ired., 217; *Folk* v, *Whitney, supra; Worrell* v. *Vinson,* 5 Jones, 91; *Gillis* v. *Harris,* 6 Jones' Eq., 267; 2 Minor's Inst., 351; Wash. Real Prop., 274; note to Shelley's case, 1 Coke R., 262.

In our efforts heretofore to effectuate what seemed to us to be the real intention of the testators, we followed, to some extent, the case of *Jarvis* v. *Wyatt,* 4 Hawks, 227. In our further researches we find that case to be questionable authority. Indeed, it has in effect—not in terms—been overruled by numerous decisions. In *Chambers* v. *Payne,* 6 Jones' Eq., 276, this Court commenting on it, say : " Of that case it is only necessary for us to remark that the point decided may be supported by the peculiar language of the will, or if it cannot be supported on that ground it must be considered as having been overruled by numerous cases since adjudicated upon the point, to several of which we have already referred."

It follows that under the devise in question Parthenia Leathers took the fee simple estate in the land described in the pleadings, and that the plaintiff in the action was not entitled to recover.

The prayer of the petitioner must, therefore, be granted. The case must be re heard, and the judgment of this Court entered therein at the February Term of 1887, must be set aside, and judgment must be entered affirming the judgment of the Superior Court.

                    Prayèr of the petitioner granted.


DAVIS, J., dissenting.   By the use of the words, " I give and bequeath to my daughter, Parthenia Leathers, during her natural life, and after her death to the begotten heirs or heiresses of her body, one-half of three tracts of land," &c., I think it manifest that it was not only the paramount intent, but the only intent of the testator to give the land to his daughter for life, with remainder to her children, sons and daughters, but under the rule in Shelley's case, that would not in the least alter the construction to be placed upon his will, if he used the words "the begotten heirs or heiresses of her body," as meaning simply *heirs* in the tech-

nical sense of that word, for I believe it will be conceded
that the rule often, and in cases of wills written by unpro-
fessional persons, oftener than otherwise, defeats the intent,
and the *single and only* intent of the testator; yet whatever
may have been his intent, if he used the word *heirs* simply,
without super-added words to limit or explain its meaning,
the technical meaning would follow. From the whole clause
of the testator's will it seems to me quite clear that he used
the word, not in any technical sense (for the language shows
that with him there could have been none) but as *descriptio
personarum,* and his one *intent,* and *only* intent was to give
the land to his daughter for life, remainder to her children.
The rule in Shelley's case is based upon the idea that there
is in the mind of the maker of the instrument, that comes
under its operation two intents, one a *paramount* or *general,*
or *legal* intent as it is called, and the other a *particular* or
*prescribed* intent, and if both intents cannot have effect, the
latter must yield to the former.   See the question discussed
by PEARSON, J., in *Ward* v. *Jones,* 5 Ired. Eq., 400.   See the
authorities cited in the case in 96 N. C., 548.

It is a rule of construction, that when technical words or
phrases are used, nothing else appearing, they must be taken
in their technical sense, and when the word "heirs," or
"heirs of the body" are used alone, without anything to
show that they were not so intended, the technical meaning
must prevail, because, standing alone, there can be no other
certain meaning given to them, but it has been held and is
settled in this State, that super-added words, "equally to be
divided," and like qualifying words which show that they
were not used in a technical sense, will prevent the opera-
tion of the rule in Shelley's case.   *Mills* v. *Thorne,* 95 N. C.,
362, and authorities there cited; *Chambers* v. *Payne,* 6 Jones'
Eq., 276.   Such words are not treated as surplusage, but as
aids to show the true meaning of the testator.   Suppose the
testator in the case before us had added, by way of explana-

tion, by " heirs and heiresses," " I mean sons and daughters," it would clearly have shown that he did not use them in any technical sense, and I apprehend that in that case the rule in Shelley's case would not be insisted on, and yet, it seems to me that is clearly what he meant, and I cannot conceive of their use by him in a technical sense, unless you treat the word " heiresses " as surplusage, and if that word, in connection with other parts of his will, tend to show his meaning, I do not see why we should reject it.

I think we have no right to reject, as surplusage, any word or words used by the testator, that may tend to show or aid in showing what he meant. It is his will that must prevail, and if it is apparent that he uses a technical word, not in a technical sense, the meaning attached to it by him should govern in the construction of his will.

If it be said that by " *heirs* or *heiresses* " is meant nothing more than *heirs*, I think the answer is that it shows none the less conclusively that the words were not used by the testator in the technical sense, importing the class of persons who take indefinitely as *heirs*.

Whatever in the past may have been the value of the rule in Shelley' case, I think it should be strictly construed when otherwise it would defeat the manifest intention of the testator. I think the tendency of modern decisions in America is to limit its operation to cases that come strictly and technically within the rule, and in many of the States it has been abolished by statute. It is a rule by which the meaning of the testator is construed, and when this meaning is clear I do not see why it should be defeated by a too liberal *construction* of a rule of construction.

As much as the memory of Coke is to be venerated for his great legal learning, I think, with all his faults, if not crimes, while Attorney General, his services in behalf of popular rights and civil liberty in resisting the encroachments and tyranny of the house of Stuart, entitle him to far more last-

ing fame than did his services in the legal war carried on by the bench and the bar between the "Shelleyites" and the "anti-Shelleyites."

The record shows that the merits are with the defendant, who purchased for value, and I regret the more for that reason that I cannot concur in the opinion of my brethren in reversing the former decision, and am glad that in this case, at least, a strict adherence to the rule is in the interest of justice.