MARTHA NICHOLS et al v. RUFUS C. GLADDEN et al.

*Rule in Shelley's Case—Deed.*

1. The common law doctrine, known as the "Rule in Shelley's Case," is in force in this State.
2. The Rule in Shelley's Case is a rule of law and not of construction, and, no matter what the intention of the grantor or testator may have been, if an estate is granted or given to one for life and after his death to his heirs or "heirs of his body," and no other words are superadded which to a certainty show that other persons than the heirs general of the first taker are meant, the rule applies and the whole estate vests in the first taker ; hence,
3. Where land was conveyed to persons named "to have and to hold same to their use during the term of their natural lives and then to their heirs after them," the Rule in Shelley's Case applies and the persons named in the deed take the whole estate in fee simple.

CIVIL ACTION, heard before *Timberlake, J.*, at Fall Term, 1895, of CLEVELAND Superior Court, it being agreed that if the Rule in Shelley's Case should be held to apply in

117—32

the construction of the deed for the land in controversy, judgment should be rendered for defendants, otherwise for the plaintiffs.    The deed was as follows :

"STATE OF ALABAMA, Benton County.

"Whereas, I, Joseph Gladden, of the county of Benton and State of Alabama, have two sons living in the county of Cleveland and State of North Carolina, viz: Harvy I. Gladden and Rufus C. Gladden, and being desirous to secure to them a home, and land for their occupation and support during the term of their natural lives have thought proper, and do by these presents give, grant, convey, release, enfeoff and confirm unto the said Harvy I. and Rufus C. Gladden all that tract of land lying and being in the county of Cleveland and State of North Carolina, to-wit:    Commencing on two chestnuts, and running thence S. 26 W. 50 poles to a post oak, thence S. 40 W. 50 poles to a small black oak, thence S. 51 W. 66 poles to a stake, thence N. 29 poles to a stake in the field, thence W. 136 poles to a small dogwood, thence N. 158 poles to a pine, rotten down, thence E. 42 poles to a black oak and hickory, thence N. 76 poles to a stake, thence E. 86 poles to a post oak, thence S. 15 poles to a pine, thence E. 98 poles to a pine on the road Wm. Lackey and, Jno. M. Patterson's corner, thence to the beginning, to have and to hold the same to their use during the term of their natural lives and then to their heirs after them and for the confirmation of the above I do hereby bind myself my heirs and assigns and will warrant and defend the same from myself my heirs and from and every person lawfully claiming the same, guaranteeing in law and equity unto the said Harvy I. and Rufus C. Gladden the right to the free use and occupation of the same during the term of their natural lives and after their deaths I do hereby give grant and convey the land above described unto the heirs of the said

Harvy I. and Rufus C. Gladden their heirs and assigns forever in fee simple.

"As witness my hand and seal this 11 day of August, 1854.

JOSEPH GLADDEN."

His Honor, being of opinion that the rule in Shelley's case did not apply gave judgment for the plaintiff and defendant appealed.

*Messrs. Webb & Webb*, for appellants.

*Messrs. Geo. E. Wilson* and *W. J. Montgomery*, for appellees.

MONTGOMERY, J.: It was agreed by the parties in the trial below that if the Rule in Shelley's case was applicable to the provisions of the deed before the court, judgment should be rendered for the defendants, but that if the rule was not applicable, then judgment should be entered for the plaintiffs. His Honor was of the opinion that the Rule did not apply and gave judgment for the plaintiffs. The defendants appealed from the judgment.

The law known as the Rule in Shelley's Case, Mr. Fearne, in his work on Remainders, says, was adopted in the reign of Edward II and had prevailed in England through the years down to the time when he wrote. It is still the law in England. It is the law in North Carolina, although in our own reports in the cases of *Mills* v. *Thorne*, 95 N. C., 362; *Jenkins* v. *Jenkins*, 96 N. C., 254; *Howell* v. *Knight*, 100 N. C., 254, and other cases, there were doubts expressed by the Court as to whether the Rule had not been abolished by Section 1329 of *The Code* which is Section 5 of Chapter 43 of the Revised Code. But in *Starnes* v. *Hill*, 112 N. C., 1, that ques-

tion was put at rest, the Court deciding that the Rule was
in force in this State, Chief Justice SHEPHERD in the
opinion construing the meaning of *The Code* sections and
showing that they did not and were not intended to affect
the Rule. *Leathers* v. *Gray*, 101 N. C., 162, and *King* v.
*Utley*, 85 N. C., 59, referred to the Rule as having been
in force here before *The Code* sections referred to. The
foundation of the Rule rests upon the aversion of the com-
mon law to the inheritance being in abeyance; and its
adoption facilitated the alienation of land by vesting the
inheritance in the ancestor, thereby enabling him to convey
the property at once without the delay attendant upon
contingent remainders. A good definition of the Rule
and the most general, is as follows: "That when the
ancestor by any gift or conveyance, taketh an estate of
freehold and in the same gift or conveyance an estate is
limited either mediately or immediately to his heirs, in fee
or in tail, the word heirs are words of limitation of the
estate and not words of purchase." 1 Coke, 104. Diffi-
culties have arisen, however, in applying it to particular
cases, because of an inclination on the part of some of the
Courts to respect more the intention of the makers of
instruments as a matter of construction, rather than the
Rule as one of law. Nevertheless the Courts seem to agree
in the general statement that it is a rule of law and not
of construction; that is, if the words heirs or heirs of the
body are used with no explanation, with no superadded
words which to a certainty show that other persons or
individuals are meant than the heirs general of the first
taker, the Rule must apply, inexorably, as one of law and
the intention of the grantor or devisor is not to be con-
sidered. It appears also to be generally held that the
Rule does not apply where the grantor or testator (for the
rule applies to both deeds and devises) uses in connection

with the words heirs or heirs of the body such explana-
tory and descriptive words or phrases as make it perfectly
clear that the word heirs or heirs of the body mean and
refer to certain particular individuals answering the
description of heirs at the death of the ancestor.    To state
it in another way: if the words "heirs" or "heirs of the
body" stand alone without such sufficient explanatory
words, the law will, even if the grantor or devisor
expressly and unequivocally declare his intention that the
grantee or devisee shall not have the estate longer than his
life, or except for his life, or during his life—or whatever
words he may use in conveying the estate of the first taker
whether he gives the free use or the occupation free to
use for a home during his life and no longer, just so the
law construes it to be in effect a life estate, declare the
word "heirs" to be words of limitation and vest the whole
interest in the ancestor.    It is not the estate which the
ancestor takes that the law considers, but the estate
intended to be given to the heirs.    The superadded words
must show that the grantor or devisor intended to change
the rule of descent, that he intended to make the words
heirs a *designatio personarum* as contradistinguished from
heirs as *nomen collectivum*, or the rule will apply though
the grantor or devisor purposed and intended to give the
ancestor only a life estate and his intention be expressed
in a manner perfectly clear.

The authorties on these propositions are numerous.    In
*Daniel* v. *Whartonby*, 17 Wall., 639, the learned Judge
who delivered the opinion of the Court in speaking of the
general rule that the intention of the testator must be
fully carried out so far as it can be done consistently with
the rules of law but no further, said: "A declaration
however positive that the Rule shall not apply or that the
estate of the ancestors shall not continue beyond the

primary expressed limitation, or that his heirs shall take by purchase and not by descent, will be unavailing to exclude the Rule._____ The rule is one of property and not of construction."

In 2 Washburn, R. P., 273, it is written "Wherever the rule does apply it is as a rule of the common law so imperative that, though there be an expressed declaration that the ancestor shall only have a life estate, it will not defeat its union with the subsequent limitation to his heirs." It was said in *Baker* v. *Scott*, 62 Ill., 88, "That though an estate be devised to a man for his life, or for his life *et non aliter,* or with any other restrictive expressions, yet if there be afterwards added apt and proper words to create an estate of inheritance in his heirs or the heirs of his body, the extensive force of the latter words should overbalance the strictness of the former, and make him tenant in tail or in fee. The true question of intent would turn not upon the quantity of estate intended to be given to the ancestor, but upon the nature of the estate intended to be given to the heirs of his body." It was held concerning the rule in *Trumbull* v. *Trumbull*, 149 Mass., 200, that "It was a rule of property and not of construction, and therefore no declarations however unequivocal, when an estate was thus created, that the ancestor should have an estate for life only, or that his estate should be subject to all the incidents of a life estate, or that the heirs should take as purchasers, would be operative." In *Crockett* v. *Robinson*, 46 N. H., 454, the Court said : "In determining whether the Rule in Shelley's case shall apply, it is not material to inquire what the intention of the testator was as to the quantity of estate that should vest in the first taker. The material inquiry is, what is taken under the second devise. If those who take under the second devise take the same estate that they would take as his heirs or as

heirs of his body the rule applies." The decisions of this Court, in cases where the Rule in Shelley's case has been the matter for consideration, are to the effect that the rule is one of law and not of construction, and are in harmony for the most part with the opinion we have expressed in this case. However, in *Jenkins* v. *Jenkins*, 96 N. C., 254, it is intimated that the word "use" which was the word descriptive of the life tenant's estate was conclusive "that no gift in fee was intended;" but the case was not decided on that point, but upon the effect of superadded words in the will going to show that the word "heirs" meant a *designatio personarum* and not heirs generally. In *Howell* v. *Knight*, 100 N. C., 254, it is true also that there are some expressions which would indicate that the true principle of the rule was confused with the principle of construction of the intention of the grantor, but upon an examination of the case it will be seen that the decision rested upon the superadded words explaining the word "heirs." In the later cases of *Leathers* v. *Gray, supra*, and *Starnes* v. *Hill, supra*, there can be no misunderstanding of the meaning of the Court. The Rule is treated as one of law and not one of construction. *Leathers* v. *Gray*, was before the Court last upon a petition to rehear. In that case a life estate was given to the first taker "and after her death to the begotten heirs or heiresses of her body forever." On the first hearing it was held that the Rule did not apply and that the word "heirs" was one of purchase. On the rehearing the judgment was reversed and Justice MERRIMON, who delivered the opinion of the Court said: "But after hearing the case reargued and having given the question raised much further consideration, we are of opinion that although the intention of the testator may have been—no doubt was—such as we declared it to be, he failed to express his purpose consistently with a set-

tled rule of law which it is our duty to uphold and enforce. ....If there were words in the context clearly showing that the testator did not use the words "heirs of her body" in their technical sense, but to imply children of the devisee, then in that case these words would be treated as words of purchase." In the further course of this opinion it was said : "In our efforts heretofore to effectuate what seemed to us to be the real intention of the testator, we followed to some extent the case of *Jarvis* v. *Wyatt*, 4 Hawks, 227. In our further researches we find that case to be questionable authority. Indeed, it has in effect, not in terms, been overruled by numerous decisions." In *Starnes* v. *Hill, supra,* Chief Justice SHEPHERD learnedly discussed the rule, citing numerous authorities, American and English, and arriving at the same conclusion reached by the Court in *Leathers* v. *Gray,* and also by us in this case, as to the effect and meaning of the Rule. In the case before us it is perfectly clear that the grantor intended to give to the life tenants an estate for life and no more. But as the word "heirs" stands unattended with superadded words going to change or qualify their ordinary legal meaning, we are of the opinion that the rule in Shelley's case does apply, and that judgment ought to have been rendered in the court below for the defendants. There was error in his Honor's ruling and in the judgment entered, and it is reversed. The court below will proceed to judgment in accordance with this opinion.

Reversed.