W. R. CHAMBLEE et als. v. W. H. BROUGHTON et als.

*Devise—Life Estate—Rule in Shelley's Case—Will, Construction of—Evidence—Insanity of Mortgagor—Collateral Attack on Judgment—Innocent Purchaser.*

1. The rule in Shelley's Case, though antiquated and based upon reasons which have long ceased to exist, is in force in North Carolina; and, hence, a devise to a person "during his natural life and at his death to his bodily heirs," vests in him a fee simple estate.

2. A deed executed by a testator to one child several years before the date of his will and having no connection therewith, is not admissible

to explain the terms of a devise, contained in the will, to another child.

3. In the trial of an issue as to the insanity of a mortgagor, evidence that, at the time of former proceedings against him for the foreclosure of a mortgage, he was in poor health and could not attend to ordinary business and occasionally had fits and spasms and had been declared an inebriate, was insufficient to go the jury.

4. Where a judgment of foreclosure was rendered in an action in which the question of the insanity of the mortgagor was raised, the mortgagor is estopped thereby and such judgment cannot be collaterally attacked thereafter on the ground of his insanity.

5. A *bona fide* purchaser at a forclosure sale without notice that the mortgagor defendant in the action was insane, will be protected though the judgment, in proper proceeding for the purpose, should be set aside on the ground of such insanity.

CIVIL ACTION, by W. R. Chamblee and others, children of B. D. Chamblee, and B. D. Chamblee and wife, against W. H. Broughton, William Boylan and others, for the value of timber cut from land claimed by the plaintiffs, for injunction, and to set aside a former judgment of foreclosure and for a resale of the land, tried before *Boykin*, *J.*, and a jury, at October Term, 1896, of WAKE Superior Court.

The land in controversy had been devised by Rayford Chamblee to B. D. Chamblee for life, with remainder to "his bodily heirs." B. D. Chamblee and wife conveyed the land by way of mortgage to Miss C. Boylan, who, in default of payment of the note secured by the mortgage, advertised and sold the land in February, 1894, the defendant, William Boylan, being the purchaser. Thereafter, in order to clear the title of the cloud cast upon it by alleged claims of the children of B. D. Chamblee, an action of foreclosure was brought by the mortgagee and the purchaser, William Boylan, against B. D. Chamblee, his wife and children. In that action the insanity of the mortgagor was pleaded (although no testimony was introduced on the issue) as well as the claim of the children of

B. D. Chamblee to the fee simple estate in the land.   The
issues were found in favor of the plaintiffs in that action
and under a judgment of foreclosure the land was sold by
a commissioner and purchased by and conveyed to the de-
fendant, William Boylan, who, after repeated and liberal
offers to the mortgager to resell to him for the amount of
the debt, sold to the defendant, Broughton, who, in turn,
sold the standing timber on the land to the defendant,
Whitley.   Thereupon this action was brought by the chil-
dren of B. D. Chamblee and by B. D. Chamblee and wife
for the purposes above stated.

Plaintiffs offered in evidence the will of Rayford Cham-
blee annexed to the complaint and admitted in the answer.
They also offered in evidence a deed from Rayford Cham-
blee, father of B. D. Chamblee, to Elvira Richardson, a
daughter referred to in the will, said deed bearing date
February 18th, 1859, and registered.   The deed was
offered in evidence to show the intent of the testator in the
use of the words "fee simple," "heirs of the body," and
"during the natural life," occurring in the will.   Defend-
ants' objection was sustained and plaintiffs excepted.
Plaintiffs then offered in evidence the answer of defend-
ants and the report of the commissioners in the case of
*Boylan* v. *Chamblee*, and upon the suggestion by the de-
fendants that the whole record be put in the entire record
in said case was offered in evidence by the plaintiffs.

The plaintiffs introduced W. H. Chamblee, who testified
in substance as follows: "I am the brother-in-law of B. D.
Chamblee, I know him and the land he lives on; it con-
tains about 367 acres, half of it timbered, oak and long
leaf pine; it is twenty miles from the railroad   The de-
fendants, Broughton and Whitley, went on the land in the
spring of 1895, and have cut timber from 100 acres.   The
timber is worth about 66 cents per hundred when sawed,

and about 10 cents per hundred growing. Whitley has a saw-mill on the land. I think the land is worth $3,000. I would have given $1,500 for it if I had been satisfied as to the title. I showed five lawyers the will, and they said the title was all right. Mr. Pace, a lawyer, told me if I bought it I would probably have a law suit. I declined to give $400 for one hundred acres of it after talking with Pace. When the papers in the other suit were served on B. D. Chamblee, I did not think he was in a position mentally to attend to business. He had fits, and was not able to do much for hs family. He was injured; did not visit much; came to my house occasonally; had a spasm there once. Hs eyes rolled, and he bit his tongue. Four of the children were under age at the time of the sale. Timber growing is worth 10 cents per hundred feet. I suppose there were 2,000 feet cut; do not know positively. The lumber has been used by Broughton in building a house on the land." Upon being recalled, the witness testified: "I do not know when the first case was begun, or when it was tried. Chamblee did not transact much business. I do not know how his mind was when he had fits. He knew right from wrong. At times he acted like a crazy man, but not so all the time. I do not know how he was at the time of trial. Once, when he had a spasm, I saw him throw something in the fire. Two years before he moved to Durham, he acted as if he was crazy; could not transact his ordinary business. I and another justice of the peace adjudged him an inebriate."

J. C. L. Harris testified that he knew B. D. Chamblee; had seen him two or three times. Witness is a lawyer, and was employed by his (Chamblee's) wife, one of the plaintiffs, on the trial of the former case. Chamblee was in poor health. No evidence was introduced as to his insanity on the former trial. The judgment was against the

defendant. "I urged an appeal, but the wife said that she did not have the money to pay for the transcript. I never spoke to Chamblee about the case."

Plaintiffs asked that the following issue be submitted: "(1) Have defendants committed trespass and waste on plaintiff's land, as alleged in the complaint? (2) What damage is plaintiff entitled to recover? (3) Was B. D. Chamblee incapable of transacting business because of mental infirmity at the trial of this action, and at the time the summons was served on him and continuously during said time? (4) Was he made a party to the foreclosure proceeding? (5) Is B. D. Chamblee estopped by the decree in said proceeding? (6) Ought a resale of the land be ordered by the court upon the whole testimony?" A jury was impaneled and sworn and the court, after hearing the evidence, intimated that plaintiffs were not entitled to recover, and the court answered the first issue, "Nothing;" the third and sixth issues, "No;" and the fourth and fifth issues, "Yes." Defendants objected. The plaintiffs asked the following special instructions: "(1) Under all the evidence, the plaintiffs are entitled to have a resale of the land. (2) There has been no fair and adequate price bid on the land, and equity is constrained to order its resale by another commissioner to be appointed by the court. (3) Considering the doubt cast upon the title, the inadequacy of the price, the qualified recommendation of the commissioner, and all the other facts in the case, a resale must be ordered. (4) If the evidence is believed by the jury, the third issue must be answered "Yes," and the fourth issue "No." The court declined to grant these prayers and plaintiffs excepted, and the court answered the issues as appears above. Plaintiffs excepted. The following judgment was rendered: "It is adjudged that none of the plaintiffs have any interest or title in the land, and that defend-

CHAMBLEE v. BROUGHTON.

ant, W. S. Broughton, is the owner and entitled to possession thereof, and that he recover of the plaintiffs and their sureties the costs of action." Plaintiffs excepted, and asked that, upon the pleadings, exhibits and other records, judgment be entered for the plaintiffs. Motion overruled, and plaintiffs excepted and appealed.

*Messrs. F. H. Busbee* and *W. B. Snow*, for defendants. No counsel for plaintiffs (appellants).

CLARK, J.: The main question presented is, whether the devise to "B. D. Chamblee during his natural life and at his death to his bodily heirs" conveyed a fee simple or not. It clearly does under the rule in Shelly's case, and that rule is still in force in North Carolina. *Dawson* v. *Quinnerly*, 118 N. C., 188; *Nichols* v. *Gladden*, 117 N. C., 497; *Starnes* v. *Hill*, 112 N. C., 1; *Leathers* v. *Gray*, 101 N. C., 162, in which cases the rule is stated, thoroughly considered and affirmed. It applies to devises equally with conveyances. 1 Fearne Rem., 89. The rule originated in the Feudal law, and a case construing it was reported in Coke's Reports, 94 (though the rule itself is found as far back as Year Book, 18 Edward II), and is based upon reasons which have long since ceased to exist. 1 Fearne Rem., 84; Williams R. P., 254, note. It is true, the rule contradicts and thwarts the intent of the grantor or devisor whose expressed purpose to confer an estate for life only upon the first taker is enlarged by an arbitrary rule of law into a fee simple, and the expressed purpose to confer all except the life estate upon the heirs is restricted so as to give them nothing. Still, it is a long established rule of property and cannot be changed except by legislative enactment. This, it seems, has been done in a majority of the States, but it has not been done in North Carolina. The

rule being in force when the will was executed, the will was in contemplation of law drawn with reference thereto. The deed made to one of the daughters had no connection with the will, having, in fact, been made several years before, was not competent and was properly excluded.

The court below properly held that B. D. Chamblee was estopped by the judgment in the foreclosure proceeding. There was not sufficient evidence to go to the jury as to the alleged insanity of B. D. Chamblee, and if there had been, the former judgment against him could not be impeached in this collateral way, but could only be attacked by a direct proceeding, *Thomas* v. *Hunsucker*, 108 N. C., 720, and *Brittain* v. *Mull*, 99 N. C., 483, and certainly the purchaser without notice would be protected, even if the judgment could be set aside. *Odom* v. *Riddick*, 104 N. C., 515; *Thomas* v. *Hunsucker*, *supra*.

Affirmed.