Demurrer sustained. Plaintiff appealed.
The pertinent facts are stated in the opinion.
This is an action for the partition of land. In March, 1879, Jesse Price, Sr., who was then the owner of the land in controversy, conveyed the same by deed to his son, John C. Price, during the term of his lifetime, and at his death to his surviving heirs, reserving to Jesse Price, Sr., the grantor, an estate for life in the land. Jesse Price, Sr., died in 1879, and John C. Price, on 15 January, 1883, conveyed the land by deed to W. P. Price in fee simple. John C. Price died on 6 April, 1906, leaving as his heirs four children, B. A. (524) Price, E. H. Price, A. B. Price and Bettie Pearsall, who are the plaintiffs, and W. P. Price, Lewis H. Price, John T. Price and C. D. Price. The defendant G. O. Griffin has acquired the interest of W. P. Price and C. D. Price by deeds duly executed to him in 1884, before this proceeding was commenced. If the deed from Jesse Price, Sr., to John C. Price conveyed a fee-simple estate to the latter, the plaintiffs are not entitled to recover; so that the only question in the case is whether it conveyed a fee or only a life estate, with remainder, to his children surviving him. The difficulty presented in the case arises from the use of the word "surviving," prefixed to the word "heirs," but we do not think this is sufficient to render inapplicable the rule inShelley's case to this limitation. It is said that as one of the principal reasons for establishing this rule was to prevent the abeyance or suspension of the inheritance, it only applied to those limitations in which the word "heirs" (or some equivalent word of inheritance) is used, on account of the maxim, nemo est haeres viventis. As, under this maxim, no one can be heir to a living person, the word "heirs" must necessarily refer to those who survive the ancestor, and the word "surviving," therefore, is mere surplusage, just as we have held that the word "lawful," in a limitation to the "lawful heirs" of a person, has no significance and does not restrict the ordinary meaning of the word "heirs." Woolv. Fleetwood, 136 N.C. 460. In Caswell's appeal, 41 Pa. St., 288,Judge Strong (afterwards a Justice of the Supreme Court of the United States), for the Court, said: "It is said there could be no other heirs than such as were living at the death of the ancestor; that the words `then living' would be superfluous, unless the testator intended children by `heirs,' and that in order to give meaning to those words the technical words of limitation must give way and be treated as only a description of persons. We are not convinced by the argument. Let it be admitted that the words `then living' are strictly of no legal meaning, when applied to heirs. This is no sufficient reason for holding that the testator, in the use of technical words of limitation, intended to depart from their ordinary legal meaning. It is not so easy to overcome the presumption. The words `heirs' and `heirs of the body' will (525) retain their significance, though the effort be to make unmeaning *Page 431 
other words in the will not technical, and even though there may be inconsistent expressions. If the words are repugnant, why should the word `heirs' give way, rather than the words `then living'? In the will of an unlettered man, however, they can hardly be called repugnant. Lawyers may understand that there are no heirs of a living person, or that the phrase `living heirs' is a superfluous addition to a gift to heirs, but laymen may not." He adds that the books are full of cases in which it has been held that superfluous expressions in a will do not suffice to reduce the word "heirs" or "heirs of the body" into words of purchase, so as to make them the root of a new inheritance or the stock of a new descent, or descriptio personarum. Chancellor Kent
(4 Kent Comm., 13 Ed., 226) says that Mr. Hargrave, in his observations on the rule, is for giving it a most absolute and peremptory obligation. "He considered that the rule was beyond the control of intention when a fit case for its application existed. It was a conclusion of law of irresistible efficacy, when the testator did not use the words `heirs' or `heirs of the body,' in a special or restrictive sense, for any particular person or persons who should be the heir of the tenant for life at his death, and in that instance inaptly denominated `heir,' and when he did not intend to break in upon and disturb the line of descent from the ancestor, but used the word `heirs' as a nomen collectivum for the whole line of inheritable blood. It is not, nor ought to be, in the power of a grantor or testator to prescribe a different qualification to heirs from what the law prescribes, when they are to take in their character of heirs; and the rule, in its wisdom and policy, did not intend to leave it to the parties to decide what should be a descent and what should be a purchase." The heirs of a man are his descendants who survive him and are capable of inheriting at the time of his death. At no other time can it be ascertained who his heirs will be. They may be his lineal descendants or those only who are related to him collaterally. Hardagev. Strooks, 58 Ark. 306. In Watts v. Clardy, 2 Fla., at pp. 389, 390, where the limitation was very much like the one in this case, it is said: "The term `surviving heirs' is one of unusual occurrence (526) in the books, for whilst we have `survivors,' `surviving children,' `sons,' `issue' and `daughters,' there is in the books no such word attached to heirs, as far as we have been able to discover; and we are inclined to the opinion that, so connected, it is without meaning, neither enlarging nor contracting the estate. The heirs of Mrs. Clardy, from necessity, are those who survive her at her death; they could not have preceded her.Nemo est hares viventis. There is no heir until the death of the ancestor. The fair import of the clause, then, would seem to be that the estate is to go to the heirs of her body at her decease. If this view be correct, the case is freed from difficulty, and the deed is a naked grant *Page 432 
to the heirs of the body. Obviously those who take as surviving heirs claim as heirs to the mother at her death, and, taking as heirs, they take by descent. According to our view, the property would descend to the whole class of heirs of Mrs. Clardy, and they would become entitled to the estate in the same manner and to the Court in Heister v.Yerger, 166 Pa. St., 445, in which the Court said that "There is no distinction between the expressions `his then surviving heirs' and `heirs then living at the time of their deaths.' In each case the word `heirs' refers to those who, under the intestate laws, would inherit from the first taker qua heirs." In May v. Lewis, 132 N.C. 115, this Court construed the following devise: "I loan unto my son Benjamin May my entire interest in the tract of land (describing it), to be his during his natural life, and at his death I give said land to his heirs, if any, to be theirs in fee simple, forever; and if he should die without heirs, said land to revert to his next of kin." We held that the rule in Shelley'scase did not apply, because of the closing words, which changed the ordinary course of descent; but it was said that if the devisor had concluded the limitation with the words "to his heirs, if any, to be theirs in fee simple, forever," the rule would have applied and given to Benjamin May a fee simple. In other words, that the expression, "if any" would not in such a case prevent the application of the rule. By the (527) words "if any" the devisor evidently meant if any living or surviving, or, to state it differently, to the "living" or "surviving" heirs, "if any." The Court further said in that case that the person designated by the technical word "heir" is he on whom the law casts an inheritance at the time of the ancestor's death, citing Croom v. Herring,11 N.C. 393, where Henderson, J., so defines the word. The limitation in this case can not be differentiated from one to a person and, at his death, to his heirs, for his heirs must be ascertained at that time. They are those upon whom, at his death, the inheritance or descent is cast. In the case of Richards v. Bergavenny, 2 Vernon, 324, the estate was limited to the Lady Bergavenny and such heirs of her body as should be living at her death, and, in default of such heirs of her body, the remainder over. The Court held that the Lady Bergavenny took an estate in fee tail, and did not attach any importance to the words "living at her death" as having the effect to restrict the words "heirs of her body" so as to cut down her estate to one for life. This case has often been cited as an authority in support of the position that such words can not be allowed to reduce the quantity of the estate or to free the limitation from the operation of the rule in Shelley's case. We are authorized to examine the context of the deed in order to ascertain the true meaning *Page 433 
of words which we are required to construe, when they are ambiguous.Gudger v. White, 141 N.C. 507; R. R., v. R. R., 147 N.C. 368. In this way we may determine whether the words "surviving heirs" were used as desigantio personarum, or as descriptive of those persons upon whom the law casts the inheritance, under the canons of descent, as heirs of John C. Price and not as purchasers from Jesse Price, or as those who take under the law and not under the deed. Looking at the instrument in its entirety, we find that, in addition to the words we have already taken from the deed, the clause of warranty contains a covenant for quiet enjoyment, which runs, not to John C. Price for life, and then to his "surviving heirs," but "to him and to his heirs and assigns forever." This may be slight evidence of what the grantor meant when he used the words "surviving heirs"; and while this may be so, it is not to be disregarded, but may be considered as shedding some light upon the question in controversy. The form of the covenant is (528) in perfect harmony with the interpretation we have given to the words of the limitation, "to him during the term of his lifetime," and, at his decease, "to the surviving heirs of the said John C. Price." It evinces a purpose to give him the fee, and not merely a life estate, by the use of proper words of inheritance which are sufficient for the application of the rule of law laid down in Shelley's case.
We believe our conclusion to be supported by recent decisions of this Court as to the application of the rule in Shelley's case. Leathers v.Gray, 101 N.C. 162; Nichols v. Gladden, 117 N.C. 497; Chamblee v.Broughton, 120 N.C. 170.
As John C. Price acquired by the deed from his father a fee simple estate, he conveyed the same estate to the defendant G. O. Griffin by the deeds executed in 1884, and the plaintiffs consequently have no interest in the land as tenants in common with the defendants. The ruling of the court was therefore correct.
No error.
Cited: Cotten v. Moseley, 159 N.C. 5; Robeson v. Moore, 168 N.C. 389.