CARRIE W. SMITH et al. v. ROGER MOORE et al.

(Filed 22 October, 1919.)

1. **Estates—Limitations—Contingencies—Remainder—Title—Deeds and Conveyances—Wills.**

A devise of the testator's estate to her two daughters, C. and J., and if J. should die without making a will, disposing of her share, or without children, her portion to C., or the children of C., if she be dead; at the death of C. her portion to go to her children; the estate of J. is in fee, defeasible upon her dying without children, with the further provision that, upon her so dying, to her sister, C., and should the sister be then dead, to her sister's children; C. taking a life estate with remainder to her children. Hence, a deed of the entire estate from both C. and J. would not convey the fee-simple, absolute title to the lands.

2. **Wills—Powers—Sales—Deeds and Conveyances—Estoppel.**

A devise of an estate with contingent limitations over, giving the first taker the power to dispose of the lands by will: *Held*, her deed would estop those thereafter claiming title under her.

3. **Wills—Interpretation— Reconcilable Provisions— Estates— Limitations— Remainders—Contingencies.**

A devise of an estate to be equally divided between the testator's two daughters is not irreconcilable with the interpretation of the will as a whole that one of them takes a life estate, remainder to her children, and the other an estate with contingent limitations over; and, where this appears, the doctrine that the last clause of the will takes precedence over those before it in the instrument, where the language is ambiguous, does not apply, but the intention is to be ascertained by a fair and reasonable consideration of the entire instrument.

4. **Wills—Devises—Purchasers—Rule in Shelley's Case—Indefinite Succession.**

Under a devise to the daughter of the testator for life, remainder to her children, and to another daughter with contingent remainder to the children of her sister, the intent of the testator will be construed that the grandchildren shall take under the will as purchasers, and not that the mother should take a fee-simple absolute, so that the children would take from her, at her death, in the quality or character of heirs, or heirs of her body, as a class, indefinitely, in succession; and the rule in *Shelley's case* will not apply.

5. **Estate—Wills—Children—Presumptions—Issue.**

Where there is a devise of an estate to the testator's two daughters, still living, with limitation over, on the contingency of their having children, etc., the law does not presume that the possibility of issue is extinct.

Civil action, tried before *Calvert, J.,* at June Term, 1919, of New Hanover.

It appears that the plaintiff, Carrie W. Smith (wife of Herbert Smith), and Janie H. Strange, who are the children of the late Mrs.

Bettie Andrews Atkinson, have contracted to sell and convey to the defendant, Roger Moore, a certain lot of land on Market Street, in the city of Wilmington, and to convey to him a good and indefeasible title thereto in fee by deed sufficient for the purpose, and the said Moore promised to pay therefor the sum of five hundred dollars. Plaintiffs tendered a deed for the lot to Mr. Moore, and he refused to accept it, upon the ground that the plaintiffs could not convey to him thereby a good title in fee, because they did not acquire such a title by the will of their mother, the material portion of which reads, as follows: "I give and bequeath my estate, to be equally divided between my two daughters, Carrie W. Smith and Janie H. Strange, but if Janie should die without making a will or without a child or children, then her portion of my estate shall go to Carrie, or the surviving sister, or to her children if Carrie is dead. She, Janie, is privileged to make a will and leave the estate to whom she will. I wish, at the death of Carrie W. Smith, her portion of my estate to go to her children. If my dear husband should be living when I die I wish him to have my home (corner Fifth and Dock streets, Wilmington, N. C.), as long as he lives, and at his death to be divided between my two daughters, Carrie W. Smith and Janie H. Strange. My daughter, Janie H. Strange, I give my interest in the Front Street house we bought together some time ago. That is to be taken out before the estate is divided. My stock and real estate I wish divided between my two daughters." The will was duly admitted to probate after the death of Mrs. Atkinson (formerly Mrs. Strange).

The judge was of the opinion, and so held, that the plaintiffs could convey a good title by their deed, and rendered judgment accordingly, and the defendant, Roger Moore, appealed.

*A. G. Ricaud for plaintiffs.*
*No counsel for defendants.*

WALKER, J. We always regret to disagree with the lower court, and especially when our inclination is to concur with it and unfetter titles, so that land may be kept in the channels of commerce. But we must, of course, follow the law and be governed by its principles. In construing this will, we must search for the intention of the testator and execute her wish as we may discover it to be, if it is not contrary to law, but is a valid one, which is the case here. So the only question is the true meaning and legal effect of the will.

The devise was made contingent by the first clause. It is true that the real property is given to the daughters, to be equally divided between them, but it is further provided that if Janie should die without leaving a will, and without a child, or children, then her portion of the estate

shall go to Mrs. Smith, her surviving sister, or to her children, if she is dead. Miss Janie took, under this clause, a defeasible fee, the contingency being that she dies without child or children, and without having left a will, but there is a further contingency, that, in that event, it shall go to Mrs. Smith, if living at. Miss Janie's death, and if not, then to her children. Of course, the fact of her leaving a will would not be material, because, if she did so, the party claiming under her would be bound or estopped by this deed in which she joins. The further contingency just mentioned arises if she does not leave a will, when, at her death, the estate will go to her·sister, or if she be dead at the time, then to her children. If Miss Janie does not marry, or dies without children, if she does marry, and leaves no will, it cannot be determined at this time who will be the children of Carrie, if the latter has died before her sister. All of her present children may be dead at that time, and other children, not now living, may be *in esse,* and they have not, and of course could not, have signed the contract. Besides, one of her living children is a minor and cannot convey an indefeasible title, and is not a party to the contract, if he could be, so as to bind himself irrevocably. His guardian does not profess, in his answer, to surrender any of his rights, but submits the matter to the court to determine what they are' and to adjudge accordingly.

But there is another question. The plaintiffs' counsel seems to concede that if Mrs. Carry Smith acquired only a life estate in her mother's land by the will, that the plaintiffs cannot comply with their contract and pass a good title by their deed. It is argued with much ability, and plausibility, that by a survey of the entire will it appears that Mrs. Atkinson's purpose was to give to her two daughters a *fee simple absolute* in her real estate, to be held and enjoyed by them as tenants in common, share and share alike, and this deduction is drawn from the first words, and the last words, in the will, where it is said she devises it to them without qualification, and that the clause, "I wish, at the death of Carrie W. Smith, her portion of my estate to go to her children," should not be allowed the effect to change the manifest intention, which is to be drawn from the other language just referred to. But the trouble with this argument is that she qualified the gift, as expressed in the first part of the will by the contingent clause which follows it, and by which she limits Miss Janie's share over to her sister, or to her sister's children if she be dead. The clause just quoted above intervenes the first and last clauses of limitation, and, as we are bound to hold, clearly and unequivocally gives Mrs. Smith a life estate, with remainder to her children at her death. But neither the last nor the first clause is necessarily inconsistent with the creation of this life estate. The property is still

divided "between the daughters," though one may take a life estate with remainder to her children, and the other a defeasible fee. At least, they are not in such irreconcilable conflict as to bring the case within the rule of construction relied on by plaintiffs' counsel, that the last clause takes precedence over those before it in the instrument.

Plaintiffs' counsel cites *Taylor v. Brown,* 165 N. C., 157, as an authority to support the rule just mentioned, and to show its application to our case. But a careful reading and consideration of that decision will show that it does not sustain the contention of plaintiffs, but rather tends the other way. The Court there said: "If Elizabeth Taylor did not take a fee simple, the limitation over vested the title, at her death, in the children of the testator under the fourth paragraph of her will. It is elementary that a will must be so construed as to effectuate the evident intent of the testator. *Lynch v. Melton,* 150 N. C., 595; 27 L. N. S., 773; *Fellowes v. Durfey,* 163 N. C., 305. The primary purpose is to ascertain the intention of the testator from the language used by him, taking the will as a whole, and not separate parts of it. It is manifest from the context of this will that the testator did not intend to give his wife an absolute estate in his lands under the first clause of his will; otherwise, the words used in the fourth clause would be meaningless and unnecessary. It is the duty of the courts in construing a will to give effect to every part of it, if possible. The testator's children were evidently in his mind when he made his will, and were as much the objects of his bounty as his wife. He evidently intended to provide for the care of his wife as long as she lived, and then that his children should share his estate between them." That case stands very close to ours in its facts and the principles relied on to sustain it, and it is sufficiently like it to control our decision. It would be difficult, if not impossible, to distinguish the two cases. The question there was, What did the testator mean? and the inquiry here is, What did the testatrix mean? If it was held there that Elizabeth Taylor did not get a fee simple, how can it be said here that Mrs. Smith does get one and not a life estate? The only distinction is that there the remainder was limited to Isham U. Taylor's heirs, while here it is given to Mrs. Smith's heirs. If anything, it is more manifest in our case that Mrs. Atkinson intended the children to be among the principal objects of her bounty, and this is clearer and more evident than it was in *Taylor v. Brown, supra,* that Isham Taylor's heirs were as much the objects of his bounty as was his wife. In this will she twice mentions the children of Mrs. Smith as those who were favored by her, and should share in her bounty, and she gives them the fee, whereas, she gives Mrs. Smith, their mother, only the life estate. In the one case she wills the property to them directly, if their mother

should not be living at the death of Miss Janie Strange, and the latter has not herself disposed of it, and dies without a child, or children, and in the other she limits the estate to them in remainder after their mother's death. There is manifestly no room here for the operation of the rule in *Shelley's case,* as it plainly appears that Mrs. Atkinson intended, beyond question, that the children mentioned by her should take, under the will, as purchasers, and not that the mother should take a fee simple absolute, so that the children should take by descent from her, at her death, if she had retained the property and owned it at that time, as was the case in *Whitfield v. Garris,* 134 N. C., 24. The clear purpose was that there should be two distinct and disunited estates, one for the life of Mrs. Smith, and the other in remainder to her children, and not that the life estate should unite with the remainder so that the children would take in the quality, or character, of heirs, or heirs of her body, as a class of persons to take collectively in succession, from generation to generation, as they would take by our cannons of descent. This is essential to bring the rule in *Shelley's case* into play, as they must take by limitation, and not by purchase, the rule itself declaring that where the estate is limited over to the "heirs" in fee or in tail, that word shall be one of limitation and not of purchase. 1 Preston on Estates; *Wool v. Fleetwood,* 136 N. C., 460-470; *Ward v. Jones,* 40 N. C., 404; *Mills v. Thorne,* 95 N. C., 362; *Whitesides v. Cooper,* 115 N. C., 570; *Nichols v. Gladden,* 117 N. C., 497; *May v. Lewis,* 132 N. C., 314; *Smith v. Proctor,* 139 N. C., 314; *Cotten v. Moseley,* 159 N. C., 11; *Jones v. Whichard,* 163 N. C., 241. In *Cotten v. Moseley, supra,* we said, citing *Crockett v. Robinson,* 46 N. H., 461, it is the form of the second limitation which determines the application of the rule, and it is so held in *Crockett v. Robinson, supra.* Under the rule in *Shelley's case,* the Court held that, "It is not material to inquire what the intention of the testator was as to the quantity of estate that should vest in the first taker. If the limitation were to A. for life, remainder to his heirs in fee simple, without other qualifying words, the actual intention would undoubtedly be that A. should take an estate for life only, and have no power to dispose of the remainder in fee, and negative words saying that A. should take for life only would add nothing to the clearness of the first words. The material inquiry is, What is taken under the second devise? If those who take under the second devise take the same estate that they would take as his heirs, or as heirs of his body, the rule applies. However clear the intention may be to create an estate in A. for life, remainder to his heirs, so that the estate shall go to those persons who are the heirs of A., and descend to his heritable blood in line of descent, the policy of the law, which established the rule in *Shelley's case,* did not allow such a

limitation. By that rule no person was permitted to raise in another an estate of inheritance, and at the same time make the heirs of that person purchasers." 6 Cruise, 325, 326, 328; Fearne on Con. Rem., 196; Hargrave's Tracts, 551; 4 Kent, 208, 214; *Denn v. Puckey,* 5 T. R., 299, 303; *Richardson v. Wheatland,* 7 Met., 172. That view of the rule was taken in *Nichols v. Gladden, supra,* by this Court, and it was added: "The material inquiry is, What is taken under the second devise?" But what is said in *Jones v. Whichard, supra,* a leading authority on this subject, is very appropriate to the special facts of our case, and to the form of the devise we are construing. After saying that, in order for the rule to apply where the words are "heirs" or "heirs of the body" (which are stronger words than those here to show descent), they must be used in their technical sense, and carry the estate to them, as an entire class, to take in succession from one generation to another, and must have the effect to pass the same estate to the same person, whether they take by descent or by purchase, the Court proceeds to state that, "Whenever it appears from the context, or from a perusal of the entire instrument, that the words were not intended in their ordinary acceptance of words of inheritance, but simply as a *descriptio personarum* designating certain individuals of the class, or that the estate is thereby conveyed to 'any other person in any other manner, or in any quality than the canons of descent provide,' the rule in question does not apply, and the interest of the first taker will be, as it is expressly described, an estate for life," citing numerous cases, some of them already cited in this opinion, *supra.* And referring to *Whitfield v. Garris,* 134 N. C., 24, and *Morrisett v. Stevens,* 136 N. C., 160, after commenting upon *Puckett v. Morgan,* 158 N. C., 344, the Court continued to say, that they were cases where one stock of inheritance was substituted, in certain events, for another, so that the former or ulterior devises would take as purchasers, and directly under the will from the devisor. The provisions in this will are much plainer to show an intent that the "children" should take in remainder, as purchasers and as immediate objects of the testator's bounty, than were those considered in the cases cited to manifest a purpose that the devisees there should take in that character. No such intention could have been expressed more clearly than by the language of this testatrix in her will, especially if it is read as an entirety, as it should be (*Jones v. Whichard, supra,* at p. 246), and when so read, we do not have to search long to find the true intent and meaning of the testatrix. We are not combatting the position taken by counsel that the word "children" may not sometimes be synonymous with "heirs" or "descendants." Redfield on Wills (3d Ed.), p. 16.

The law presumes that the possibility of issue is not extinct, and that there may be other children of the marriage to share in this property

who, of course, have not signed the contract. Whether we construe the remainder to be vested, or as one, while vested, which will open and let in after-born children, who fulfill the description at the life tenant's death, or to be contingent, as being confined to those children living at the death of the first taker (*Irvin v. Clark*, 98 N. C., 437), it is apparent that there will be a defect in the purchaser's title, without considering the other question previously stated, as to the present minority of one of the children. We held, at this term, in *Morton v. Pine Lumber Co.*, 100 S. E., 322, that a guardian cannot sell, or part with, his ward's interest in land, but must do so, if at all, by regular judicial proceedings, under the statute, so that the Court may pass upon the necessity, propriety, or expediency of his doing so.

The court was in error when it construed this will otherwise than we have herein indicated its meaning to be, and for this reason the judgment must be reversed.

Whether the property can be sold under the statute relating to contingent estates and interests we have not been asked to declare.

Reversed.