(Decided 13th January, 1893.)

---

PAUL A. SEEGER *vs.* J. WILSON LEAKIN, Surviving Exeĉutor of MARY MICHAEL.

*Construction of Will—Estate tail—Bodily heirs—Leasehold Estate—Rule in Shelley's Case—Charge upon Real Estate for Payment of Legacies—Power of Sale—Naked power— Power of Executor to Convey by Deed—Art. 93, sec. 282, of the Code.*

A testator, whose will was made in July, 1821, left a widow, and several children. Subject to an estate for life or widowhood given to his widow, the following devise or bequest was made to

Seeger *vs.* Leakin, Ex'r.

his daughter *Josephine:* "I give and bequeath unto my daughter Josephine, her bodily heirs, if any she shall have, my two three-story tenements on south Liberty street, they adjoining on an alley," &c.; "they paying the yearly ground-rent of $13.33⅓ to P. H. and his heirs forever, and the taxes," &c.; and after declaring that his widow should enjoy the property during her life or widowhood, the clause of the will concludes thus: "Reserving the said tenements unto my said daughter *Josephine* during her natural life, from the date of the death of my said wife or her intermarrying, as aforesaid, she paying the aforesaid ground-rent and taxes, or assessment, yearly as aforesaid, during her natural life." And in a subsequent clause, the last in the will, the testator inserted this provision: "If any of my said children shall die without having bodily heirs, my other children's bodily heirs, if any, shall have the proportion therein of the bequeathed property, reserving my other children, which shall be equally divided among all my other children's bodily heirs which they may have," &c. The daughter *Josephine* died unmarried and without issue, and by her will dated in November, 1870, she devised and bequeathed to her sister *Mary* all the property. estate, and effects, real and personal, of which she was or might be thereafter seized and possessed; and afterwards she acquired the reversion or fee simple estate in the property above mentioned. HELD:

1st. That it was the intention of the testator that the property in question should go, not only to his daughter *Josephine* for life, but to her issue or descendants, if any she should have; and though the terms employed were not of the ordinary technical form to create an estate tail in the devisee, yet they were sufficiently plain in meaning to show, according to settled principles of construction, what estate or interest was intended to be devised.

2nd. That "bodily heirs," simply mean, "heirs of the body," and technical formality in the terms employed in a will are not necessary to create an estate tail.

3rd. That any terms denoting an intention to give the devisee an estate of inheritance, if the subject of the devise be real estate, descendible to his, or some of his lineal, but not to his collateral heirs, (which is the characteristic of an estate tail, as distinguished from a fee simple) are sufficient.

4th. That the limitation here being to "my daughter Josephine, her bodily heirs, if any she shall have," these terms embraced

the whole line of lineal descendants, and excluded all who were not the issue of her body; and, in a devise of real estate, would, at the common law, create an estate tail general in the daughter, though by the operation of a provision in the statute regulating descents such terms create an estate in fee simple.

5th. That the subject of the devise to the daughter *Josephine*, being leasehold estate, and being but a chattel interest, was not the subject of entail; and the principle is well settled that generally, with but few special exceptions, where personal estate, including of course terms of years of whatever duration, is bequeathed in terms, which, if applied to real estate, would create an estate tail, such a bequest, in analogy to the operation of the rule in *Shelley's Case*, will vest the subject of it (including leasehold) absolutely in the person who would be the immediate donee in tail.

6th. That it was clear, therefore, that the bequest to the daughter *Josephine* of the leasehold tenements. mentioned and described in the will of her father, conferred upon her, by way of remainder, an absolute leasehold estate.

A testatrix died in April, 1891, leaving a will made in February, 1887, and a codicil made in June, 1887. At the time of her death she was seized of real estate valued at $25,000, and the inventory of her personal estate amounted to $11,350. By the first item of her will she devised half of her burial lot; by the next six items she disposed of certain specific articles of her personal effects; by the next clause she directed certain grave-stones to be erected at the cost of her estate; and by the ninth and tenth clauses she gave · certain pecuniary legacies amounting to $2000, which by the eleventh clause she directed to be paid over in full to the legatees, and that the tax thereon, if any, due the State, should be paid out of her estate. By the twelfth item she gave and devised as follows: "I give, devise and bequeath all the rest and residue of my estate, after the payment of the legacies and performance and execution of the requests and directions hereinbefore mentioned, as follows, viz.," Following this clause were thirteen pecuniary bequests or legacies, numbering from item thirteen to twenty-five inclusive, and amounting in the aggregate to the sum of $30,000. And then, the testatrix by the twenty-sixth clause of her will declared that she gave, devised, and bequeathed :"all the rest and residue of her estate and property not herein before disposed of, of every kind and nature whatsoever, real, personal and mixed, whether vested or in reversion,

Seeger *vs.* Leakin, Ex'r.

to" (two charitable corporations) "in equal proportions share and share alike;" and by the last clause she appointed her executors and clothed them with power of sale in these terms: "I hereby authorize and empower my said executors, or the survivor, to make sale of any part or parts of my estate, real or personal, not herein specifically devised or bequeathed, at any time or times my executors, or the survivor, may deem advantageous or expedient, in the settlement or division of my said estate." By the codicil the testatrix revoked the twenty-sixth or final residuary clause of the will, and, in lieu thereof, she bequeathed to the two corporations or institutions therein named the sum of $1000 each; and by the codicil she expressly republished and declared her former will in all its parts, except the twenty-sixth clause, thereby revoked. HELD:

1st. That it was the intention of the testatrix that all of the legacies given by her will should be paid, if her estate, real and personal, was sufficient for the purpose; and this could not be done unless the real estate be charged, and converted into money, to raise a fund with which to pay the legacies.

2nd. That it was clear that by the terms of the twelfth clause the preceding pecuniary legacies were charged upon the real estate as well as upon the personal; for that clause applied to both kinds of estates, and it was expressly declared, that it was only after the payment of the preceding legacies that the subsequent bequests were to be paid, and that out of the blended residue of the real and personal estate as thereby devised and bequeathed.

3rd. That although the subsequent disposition of the residue of the estate was in the form of pecuniary legacies, it was clearly indicated from what source the fund was to be derived for their payment, and that was the blended fund of the real and personal estate; and this when read in connection with the power or authority conferred upon the executors, left no room for doubt of the right of the executors to sell the real estate for the payment of the legacies charged thereon.

4th. That this construction, and the power of sale were in no manner affected or modified by the revocation of the twenty-sixth or last residuary clause of the will.

5th. That as the real estate was not devised to or vested in the executors by any provision in the will, they had only a naked authority to sell, and in the meantime the freehold descended to the heirs-at-law, who were entitled to the profits thereof until sale was made.

6th. That upon sale by the executors and ratification by the Orphans' Court, they were authorized by statute to make a conveyance of the land sold.

APPEAL from the Orphans' Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., BRYAN, FOWLER, PAGE, ROBERTS, McSHERRY, and BRISCOE, J.

*Oscar L. Quinlan,* and *Samuel J. Harman,* for the appellant.

*J. Wilson Leakin,* and *Richard R. Battee,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

This appeal is from the Orphans' Court of Baltimore City, and is taken from an order of that Court overruling exceptions to a sale of certain real estate made and reported by the executors of Mary Michael, deceased. The real estate was sold to the appellant by the executors under and by virtue of a power in the will of the deceased ; and the exceptions were taken to the sale by the purchaser, upon the ground of supposed defects in the title, and the want of power in the executors to make a valid sale.

There were three exceptions filed; but the first has been abandoned by the appellant. The second exception raises a question of construction on the will of Wendel Michael, the father of Josephine and Mary Michael, deceased,—the will bearing date in July, 1821.

Wendel Michael left surviving him a widow and several children, and was possessed at the time of his death, of various pieces or parcels of property in the City of Baltimore, most of which appear to have been leasehold

estates. His will is very inartificially and untechnically drawn; but we think there is but little difficulty in determining the proper construction to be placed upon the devises here involved.

Subject to an estate for life or widowhood given to his widow, the following devise or bequest is made to his daughter Josephine: "I give and bequeath unto my daughter Josephine, *her bodily heirs*, if any she shall have, my two three story tenements on south Liberty street, they adjoining on an alley and a house belonging to John Bausman; they paying the yearly ground-rent of $13.33½ to Peter Hoffman and his heirs forever, and the taxes," &c. And after declaring that his widow should enjoy the property during her life or widowhood, the clause of the will concludes thus: "reserving the said tenements unto my said daughter, Josephine, during her natural life from the date of the death of my said wife, or her intermarrying as aforesaid, she paying the aforesaid ground-rent and taxes or assessment yearly as aforesaid, during her natural life." And in a subsequent clause, being the last in the will, the testator inserted this provision—"If any of my said children shall *die without having bodily heirs*, my other children's bodily heirs, if any, shall have the proportion therein of the bequeathed property, reserving my other children which shall be equally divided among all my other children's bodily heirs which they may have," &c. This latter part of the clause is certainly very obscure, to say nothing of its grammatical construction.

The daughter Josephine died unmarried and without issue; and by her will, dated in November, 1870, she devised and bequeathed to her sister Mary Michael, all the property, estate and effects, real and personal, of which she was, or might be thereafter, seized and possessed. And afterwards, it appears, she acquired the reversion or fee simple estate in the property here in question.

There seems to be but little room for doubt that it was the intention of the testator, Wendel Michael, that the property in question should go, not only to his daughter Josephine for life, but to her issue or descendants, if any she should have; and though the terms employed are not of the ordinary technical form to create an estate tail in the devisee, yet they are sufficiently plain in meaning to show, according to settled principles of construction, what estate or interest was intended to be devised. "Bodily heirs" simply mean "heirs of the body;" and technical formality in the terms employed in a will are not necessary to create an estate tail. Any terms denoting an intention to give the devisee an estate of inheritance, if the subject of the devise be real estate, descendible to his or some of his *lineal*, but not to his collateral heirs, (which is the characteristic of an estate tail as distinguished from a fee simple,) are sufficient. Here the limitation is to "my daughter Josephine, *her bodily heirs*, if any she shall have." These terms embrace the whole line of lineal descendants, and exclude all who were not the issue of her body; and, in a devise of real estate, would, at the common law, create an estate tail general in the daughter, though, by the operation of a provision in our statute regulating descents, such terms create an estate in fee simple.

But the subject of the devise in this case to the daughter Josephine, was leasehold estate, and being but a chattel interest, was not the subject of entail; and the principle is well settled, that generally, with but few special exceptions, where personal estate, including of course terms of years of whatever duration, is bequeathed in terms which, if applied to real estate, would create an estate tail, such a bequest, in analogy to the operation of the rule in *Shelley's Case*, will vest the subject of it (including leasehold) absolutely in the person who would be the immediate donee in tail. This principle is

settled by many decided cases, but it is only necessary to cite the case of *Horne vs. Lyeth*, 4 *H. & J.*, 431, and the recent case in this Court of *Hughes vs. Nicklas*, 70 *Md.*, 484. It is clear therefore, that the bequest to the daughter Josephine of the leasehold tenements, mentioned and described in the will of her father, conferred upon her, by way of remainder, an absolute leasehold estate; and that being so, it follows that the Orphans' Court was quite right in overruling the second exception.

The third exception relates to the power of the executors, under the will of Mary Michael, to make a valid sale of the real estate sold to the appellant.

The testatrix, Mary Michael, died April 29th, 1891. She was, at the time of her death, seized of real estate, valued at $25,000; and the inventory of her personal estate amounted to $11,350. She made her will, duly executed, on the 15th of February, 1887. She also made a codicil to her will on the 16th of June, 1887. This will and codicil were duly admitted to probate.

By the first item of the will, the testatrix devised half of her burial lot in Greenmount Cemetery; and by the next six items in the will she gave certain specific articles of her personal effects to persons named; and she then, by the next clause, directed certain gravestones to be erected at the cost of her estate; and by the ninth and tenth clauses she gave and bequeathed pecuniary legacies amounting to two thousand dollars, and these, by the eleventh clause, she directed to be paid over in full to the legatees, and that the tax thereon, if any, due the State, should be paid out of her estate. Then, by the twelfth item or clause of the will, she gave and devised as follows: "I give, devise, and bequeath, *all the rest and residue of my estate* (after the payment of the legacies and performance and execution of the requests and directions hereinbefore mentioned,) *as follows*, viz." Following this clause are thirteen pecu-

niary bequests or legacies to charitable and religious
institutions, numbering from item thirteen to twenty-
five inclusive, and aggregating in amount the sum of
$30,000. And then, supposing that the preceding be-
quests would not consume her estate, the testatrix, by
the twenty-sixth clause of her will, declared that she
gave, devised and bequeathed, "*all* the rest and residue
of her estate and property, (*not hereinbefore disposed of*,)
of every kind and nature whatsoever, real, personal or
mixed, whether vested or in reversion, to the Nursery
and Child's Hospital of Baltimore City, located, &c.,
and to the Young Women's Christian Association of
Baltimore, in equal portions, share and share alike."
And then, by the last clause in the will, she appointed
her executors, and clothed them with power of sale in
these terms: "I hereby authorize and empower my said
executors, or the survivor, to make sale of any part or
parts of my estate, real or personal, not herein specifi-
cally devised or bequeathed, at any time or times my
said executors, or the survivor, may deem advantageous
or expedient, *in the settlement or division of my said
estate.*"

By the codicil, the testatrix revoked the twenty-sixth
or final residuary clause of the will, and, in lieu thereof,
she bequeathed to the two corporations or institutions
therein named, the sum of one thousand dollars each;
and by the codicil she expressly republished and de-
clared her former will in all of its parts, except the
twenty-sixth clause thereby revoked.

No one can read this will without being convinced
that it was the intention of the testatrix that all of the
legacies therein given should be paid, if her estate, real
and personal, was sufficient for the purpose. This could
not be done unless the real estate be charged, and con-
verted into money, to raise a fund with which to pay the
legacies. The terms of the will would seem to leave no

doubt upon this subject, and that the testatrix contemplated such a conversion and application of her real estate; for she certainly knew that her personal estate was largely insufficient for the payment of all the legacies given by her.

As will be observed, there are two residuary clauses in the will, the twelfth and the twenty-sixth; and they both contemplated final and complete disposition of the estate, both real and personal, in the manner designated. It is clear that, by the terms of the twelfth clause, the preceding pecuniary legacies are charged upon the real estate as well as upon the personal; for that clause applies to both kinds of estates, and it is expressly declared that it is only after the payment of the preceding legacies that the subsequent bequests are to be paid, and that out of the blended residue of the real and personal estate, as thereby devised and bequeathed. (*Lupton vs. Lupton,* 2 *John. Ch.,* 614, 623; *Stevens vs. Gregg,* 10 *G. & J.,* 143; *Cornish vs. Wilson,* 6 *Gill,* 316.) It is true, that the subsequent disposition of the residue of the estate is in the form of pecuniary legacies; but it is clearly indicated from what source the fund is to be derived for the payment of those legacies, and that is, the blended fund of the real and personal estate. And this, when read in connection with the power or authority conferred upon the executors, would seem to leave no room for doubt of the right of the executors to sell the real estate for the payment of the legacies charged thereon. And this construction, and the power of sale, are in no manner affected or modified by the revocation of the twenty-sixth or last residuary clause of the will.

The contention of the appellant is, that the legacies do not constitute a charge upon the realty, and the executors having a mere naked authority, cannot lawfully sell and convey the real estate under the will to satisfy the legacies. But we have shown that this con-

tention is unfounded; that the legacies do constitute a charge upon the realty, and that the power of sale may be well exercised by the executors to raise a fund to pay such legacies. It is true, the real estate is not devised to or vested in the executors, by any provision in the will; and in such case the executors have only a naked authority to sell; and in the meantime the freehold descends to the heirs-at-law, who are entitled to the profits thereof until sale made. *Co. Litt.*, 113; *Jenifer's Lessee vs. Beard*, 4 *H. & McH.*, 73; *Guyer vs. Maynard*, 6 *G. & J.*, 420. But upon sale by the executor, and ratification by the Orphans' Court, the executor is authorized by statute to make a conveyance of the land sold. *Code, Art.* 93, *sec.* 282.

It follows that the third exception to the sale was properly overruled; and that the order of the Orphans' Court appealed from must be affirmed.

*Order affirmed.*

(Decided 13th January, 1893.)