SAFE DEPOSIT AND TRUST COMPANY OF BALTIMORE, TRUSTEE UNDER WILLS OF R. J. REYNOLDS, AND KATHARINE S. JOHNSTON, AND DEED OF KATHARINE S. JOHNSTON AND DECREE OF SUPERIOR COURT OF FORSYTH COUNTY, N. C., ETC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATES ADMINISTRATION, INC., ADMINISTRATOR OF THE ESTATE OF ZACHARY SMITH REYNOLDS, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 86394, 86395. Promulgated June 19, 1940.

146

*Charles McH. Howard, Esq.*, for the petitioners.
*Brooks Fullerton, Esq.*, for the respondent.

148

## OPINION.

KERN: Respondent has determined the deficiency on the theory that the interest of the decedent, Smith Reynolds, in the *corpora* of the three trusts here in question, the first, a testamentary trust created by his father, R. J. Reynolds; the second, an *inter vivos* gift in trust made by his mother; and the last a testamentary trust created also by his mother, is includable in his gross estate either under section 302 (a) of the Revenue Act of 1926, set out in the margin,[1] a catch-all provision

---

[1] SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death;

\* \* \* \* \* \* \*

(f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, or (2) by deed executed in contemplation of, or intended to take effect in possession or enjoyment at or after, his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth.

including everything in decedent's estate to the extent of his interest, or under section 302 (f), also set out, which includes property passing under a general power of appointment exercised by decedent and intended to take effect at or after his death. Since the assertion of the deficiency under subsection (a) raises a novel question, the consideration of it may be deferred until subsection (f) has been discussed, for should the transaction constitute a transfer of property under a general power exercised by decedent, a question fully considered in numerous cases by this Board and the courts, it will not be necessary to consider the first question.

1. *Power of appointment.*—It is said by respondent that the property passed to decedent's brother and sisters through the exercise by decedent in the will which he executed in New York on August 21, 1931, of a general power of appointment; that the Supreme Court of North Carolina passed upon and denied only the validity of the will and not the validity of the exercise of the power; that the exercise was valid under state law; and that, in the alternative, those who took under the posthumous compromise settlement did so in compromise of their rights as appointees under the power and therefore as appointees under the doctrine of *Lyeth* v. *Hoey*, 305 U. S. 188. The argument on this last point is not entirely clear, but we shall consider it in due course.

To sustain respondent's contention, it must appear that the power of appointment was general, that it was exercised, and that the property passed under it. It does not seem to be disputed that the power conferred by the three instruments was general. Under "item fourth" of his will, R. J. Reynolds left the residue of his estate to his wife and his children on trust, the latter to receive a two-thirds share of the whole, and, after providing for the distribution in part and accumulation of the rest of the income of each child until he should reach the age of 28, directed that at that time "each of them shall become entitled to and shall respectively receive from said trustee his * * * share of the corpus of the estate"; with the provision added, which is important here, that "should any of my children die before he * * * shall arrive at the age of twenty-eight (28) years, then the share * * * which would have been payable to him * * *, had he * * * arrived at that age, shall be continued to be held by my said Trustee for the use and benefit of his * * * devisees by Will until the time that such child would have arrived at the age of twenty-eight years * * * when the said trust shall cease and the estate shall then become payable to such devisees, the Trustees. however, paying in the meanwhile the income from said share to them * * *."

There can be no doubt that the power here was general.

The power conferred by the trust deed of 1923, executed by decedent's mother, provided that the trustee should hold the shares of the several children for the life of each "and upon its death shall distribute, transfer and deliver the same to and among or hold the same for such person or persons, objects or purposes, in trust and otherwise, as such child shall by its Last Will nominate and appoint to take the same * * *."

There is no doubt that this power was likewise general.

Finally, under decedent's mother's will, made in 1924 and probated the same year, the trustee is directed to hold the share of each child for life, and upon its death to distribute it to "such person or persons, objects or purposes, in trust or otherwise, as such child shall by its Last Will nominate and appoint to take the same * * *." Here, again, the power was general.

The decedent at least attempted to "exercise" the power given him by the three instruments within the meaning of the Federal act. He did so in August 1931 by a purported will executed in New York, the effect of which we shall examine under the next head. Unless "exercise" is to be interpreted as an effective exercise, we do not think petitioner would deny that decedent exercised the power of appointment; and the effectiveness of the exercise we can best consider under the third requisite.

We pass then to the final question, whether the property "passed" under the will in question. The Supreme Court, in *Helvering* v. *Grinnell*, 294 U. S. 153, held clearly that the property must pass under the power to bring it within the gross estate. The *Grinnell* case is further significant in this relation in that it indicated clearly that the passing of property under a power of appointment is to be determined by local law, and where, as here, the power was exercised by a minor in a jurisdiction foreign to his domicile of origin, it is to be determined under the general rules of conflict of laws. We turn then to that question.

Professor Beale states that the "power to appoint personal property by will may be exercised either (a) by a will valid by the proper law or (b) by an instrument which would be a will by the law of the donor's domicile." Conflict of Laws, § 287.1, p. 1010. See also American Law Institute, Restatement, Conflict of Laws, § 287. In the instant case, therefore, a will executed according to the formalities either of New York (assuming that the decedent had the capacity to execute a will), or of North Carolina law would validly exercise the power. We may assume that the New York will, if decedent had acquired a domicile there, was valid and sufficient to exercise the power, and, even further, that whether it was a will or not by New York law, if he had acquired a domicile in New York

the power could be validly exercised by an instrument executed there if it would have been a will under North Carolina law. Of course, if the decedent still retained his North Carolina domicile, the law of that state alone would determine whether the power was properly exercised and in such an event would determine the capacity of the decedent to execute it. We shall discuss first the will's validity under North Carolina law before taking up the question of his change of domicile.

Petitioner's counsel points out that the *effect* of an appointment depends upon the law that created the power; and if it was created by will, as here, its effect would be determined by the law of the donor's domicile. Beale, op. cit. § 285.1. While this is true, it adds nothing, for the appointment by the decedent to his brother and sisters would seem to need no construction to make it clear. Petitioner's counsel also points out that whether or not a general power to appoint personal property by will is executed if it is exercised by a general residuary bequest *not specifically mentioning the power*, is likewise determined by the law of the donor's domicile at the time of the creation of the power, which is here North Carolina's law. Beale op. cit. § 288.1; American Law Institute, Restatement, Conflicts § 288. This principle, however, has no bearing here, for decedent in his purported will referred expressly to the power of appointment given him in each of the three donating instruments, his father's will, his mother's trust, and his mother's will. We must not lose sight of the qualification of the rule stated above as to the law which controls the effect of the appointment, for the trust *res* was under all three instruments held in Maryland where the trustee, the Safe Deposit & Trust Co. of Baltimore, was likewise present and doing business. That qualification is that "generally the validity of the appointment as affecting the title of goods situated in a state as creating a valid title is determined by the law of the state of situs of the goods." Beale, op. cit. § 285.1. The law of Maryland, therefore, may conceivably limit the effect to be given the appointment under North Carolina law. We may call attention here to another question which it may not be necessary to decide, and that is whether, assuming that the decedent donee of the power had acquired a new domicile in New York and had in age and otherwise the capacity to make a valid will under the law of that state, it would be effective, notwithstanding the law of the donor's domicile required a greater age for testamentary purposes than the donee had then attained, in the absence of any indication of intent in the instruments creating the power to allow exercise of it over movables at such lesser age. Petitioner's counsel confesses that he has found no cases on this specific point, but argues that the principle of comity would not

extend so far as to require the state of the donor's domicile to recognize as valid the exercise of a power by a nonresident donee in such circumstances. If the general rule which we have stated is correct, that the power may be exercised by a will valid in the donee's domicile, we fail to see how the policy of the donor's state may limit its exercise unless, as appears to be suggested, the policy of the donor's state is in some way a limitation inherent in the power itself because created under its jurisdiction, or the intent of the donor of the power is to be construed as limited by a like consideration. As said before, we may leave these questions, however, until we have examined the North Carolina law and if necessary also the acquisition by decedent of a new domicile in New York.

We turn now to the North Carolina law. The laws of the state, by section 4128, provide that "No person shall be capable of disposing of real or personal estate by will until he shall have attained the age of twenty-one years." Code, Annotated (1935). The North Carolina laws further provide, by section 4132:

No appointment, made by will in exercise of any power, shall be valid unless the same be executed in the manner by law required for the execution of wills; and every will, executed in such manner, shall, so far as respects the execution and attestation thereof, be a valid execution of a power of appointment by will, notwithstanding it shall have been expressly required that a will made in exercise of such power should be executed with some additional or other form of execution or solemnity.

The decedent here had not attained the age of 21 at the time when he executed the New York will in August 1931, nor, for that matter, at the time of his death on July 6, 1932. Since he was born on November 5, 1911, in August 1931 he was nearing the end of his twentieth year.

The language of the three instruments granting to decedent a power of appointment does not indicate any intention on the donor's part, in any instance, that the power shall be exercised by a will made in accordance with the law of a particular state. Nor does it limit or qualify in any way the exercise of the power given. R. J. Reynolds's will, executed in 1917 and probated the next year, provides merely that, should any of his children die before he or she shall arrive at the age of 28, when the corpus was to be distributed, then such child's share would continue to be held by the trustee for the benefit of his "devisees by will", with remainders over in case of intestacy. While elaborate provisions are made for the payment of the income to the children until they should reach the age of 21, or thereafter and until they should reach the age of 28, and although special provision is made for the event of his wife's death in either the first or the second of these periods, nothing is said specifically of any disposing power which

could be exercised by the children by will or otherwise in either of these periods. There is nothing to indicate, in other words, that the donor of the power intended that it could be exercised before the child was 21. The *inter vivos* trust of decedent's mother likewise tells us nothing. It provides that the child may "by its Last Will nominate and appoint", with a remainder over "in default of such appointment." Her will uses the same language.

The Supreme Court of North Carolina has construed the language of these settlements in a case which was brought in the Superior Court of Cabarrus County by one of the guardians (a trust company) of Anne Cannon Reynolds, decedent's daughter, against the other guardian, the child's grandmother, to impeach the judgment excluding that child from further participation in the trust estates of decedent in accordance with the forced trust settlement made on the child and decedent's first wife by decedent during his lifetime. This suit was brought after decedent's death and after the birth of his posthumous son by his second wife. The lower court sustained the consent judgment of the Forsyth County Court upholding the earlier trust settlement, but the Supreme Court of North Carolina reversed and directed that proceedings be brought to test the validity of the Forsyth County judgment, *In re Reynolds' Guardianship*, 206 N. C. 276; 173 S. E. 789 (1934). Respondent contends that what is said by the Supreme Court of North Carolina in that case respecting the validity of decedent's exercise of the power of appointment is *obiter dictum*, but it would seem that no purpose would have been served by that court's reversing and remanding to the Cabarrus County Court for further proceedings if the effect of the exercise of the power had not been in issue, for if the exercise was valid the child would have taken nothing; if it was not, she was entitled as a remainderman to an interest in all three settlements under the donor's will or trust deed, unless the decedent's *inter vivos* trust settlement on her and the consent judgment affirming it were binding. We think, therefore, that, while there was no final adjudication of the right of the parties in the North Carolina courts, what the Supreme Court of North Carolina said in regard to the validity of the decedent's New York will is conclusive of the law of the donor's domicile. Since the Supreme Court of North Carolina deals not only with the question under local law of the capacity of an infant to make a will, but also with the presumed intent of the donor that his gift of the power shall be read in the light of local law, and with the effect of emancipation by marriage on an infant, we quote those parts of the opinion. Three justices concurred and one dissented, and although one of the concurring judges said that "The New York will was not upon the lap of the Chancellor", and the chief justice in his opinion made no reference to the will, we are of the opinion that the decision, while not a conclusive adjudication of the

question, makes clear the North Carolina rule of law as applied to the facts here. The court, per Clarkson, J., said (173 S. E. at 796–797):

The alleged will of Zachary Smith Reynolds appears to be inoperative and void. When the alleged will was executed in New York, he was under the age of 21 years. C. S. § 4128, is as follows: "No person shall be capable of disposing of real or personal estate by will until he shall have attained the age of twenty-one years." General laws of state, in force at time of execution and performance of contract, become part thereof. *Ryan* v. *Reynolds*, 190 N. C. 563, 130 S. E. 156; *Monger* v. *Lutterloh*, 195 N. C. 274, 142 S. E. 12; *Steele* v. *Metropolitan Life Insurance Co. of New York*, 196 N. C. 408, 145 S. E. 787, 61 A. L. R. 821. By analogy, to show R. J. Reynolds' intent, it can be inferred that his will was made with the North Carolina law in view. No language gives the right of appointment under 21 years of age. In this connection, it should be noted that the judgment and decree was signed in Forsyth county superior court on August 4, 1931, which expressly states that Zachary Smith Reynolds "under the Statute law of North Carolina, cannot validly make a will disposing of his share in said estate until he reaches the age of twenty-one years." And further "that in the event of the death of the said Zachary Smith Reynolds, prior to his reaching the age of twenty-one years, the said infant child, Anne Cannon Reynolds II would inherit his entire estate."

The wills of R. J. Reynolds and Katherine S. Johnston appear to indicate an intention that Zachary Smith Reynolds could only exercise the power of appointment after he became 21 years of age, and on that account the New York will would appear to be inoperative and void. It appears that his domicile was in North Carolina. In the complaint filed in the Forsyth county proceedings on August 4, 1931, just seventeen days before the alleged execution of the New York will, it was alleged: "That the defendant, Zachary Smith Reynolds, is a citizen and resident of the State of North Carolina, and has been such since his birth, and that the defendants, W. N. Reynolds and R. E. Lasater, are the duly, legally and regularly constituted general guardians of and for the said Zachary Smith Reynolds." In the answer filed on his behalf by his guardian this allegation is admitted.

In *Thayer* v. *Thayer*, 187 N. C. 573, at page 574, 122 S. E. 307, 308, it is said: "A domicile of choice is a place which a person has chosen for himself; but an unemancipated infant, being non sui juris, cannot of his own volition select, acquire, or change his domicile." We do not think that marriage changed his status in this jurisdiction. In some instances, where the right is given him under the statute, the marriage of an infant emancipates the infant as to his rights to earnings. See *Wilkinson* v. *Dellinger*, 126 N. C. 462, 35 S. E. 819; *Little* v. *Holmes*, 181 N. C. 413, 107 S. E. 577; C. S. § 4134. * * * These settlements are usually between members of families who are sui juris, of full age, with capacity to act, but not so in this case where we are dealing with the rights of an infant. * * *

After quoting with approval from Goodrich on the Conflict of Laws (1927) to the effect that the domicile of a legitimate minor child is that of the father, if the latter is living; that the domicile of origin is that of the father; and that the minor by his own act, while under the disability of infancy, can not establish a separate domicile for himself; the court continued:

* * * We think it unnecessary to consider the threat of Zachary Smith Reynolds' purpose in going to New York to acquire a domicile to make a will

and its illegality in this jurisdiction. It must be borne in mind also that Zachary Smith Reynolds' guardians under the will of his father were domiciled in Forsyth County.

We are of the opinion that the New York will was invalid as a will under North Carolina law because of the disability of the testator's minority. The respondent insists, however, that even if it was not valid as a will, it was still a proper exercise of the power of appointment under North Carolina law, citing *Denson* v. *Pine State Creamery Co.* (N. C. 1926), 131 S. E. 581. We have examined that case and do not find that it supports the proposition claimed; it turned on the proper execution of a power where no direct reference to the power was made in the deed executing it.

If the decedent could not exercise the power under North Carolina law, did he acquire a new domicile in New York, and, if so, did he have the capacity as a minor to make a valid will under the law of that State? Respondent's counsel at the hearing referred to the New York doctrine of emancipation of a minor by marriage, but has not discussed the question on brief. Obviously, decedent was not emancipated by marriage for the purpose here concerned by the law of North Carolina. We think it unnecessary, however, to go farther than to inquire whether decedent acquired a New York domicile, for if he did not, the other questions become immaterial.

We are of the opinion that the decedent could not and did not in the circumstances acquire a New York domicile, and the brief relation of a few facts we think sufficient to support this conclusion. His guardians appointed by his mother's will were her second husband, J. Edward Johnston, and his father's brother, W. N. Reynolds, with provision for succession. Robert E. Lasater succeeded Johnston. Appointment of guardians by the father, or if he be dead, by the mother, is fully provided for in the North Carolina law. Code (1935), § 2151. We assume, as petitioner contends, that these guardians were, pursuant to the statute, appointed to take "custody and tuition" of decedent's person, and not merely of his estate. Their consent would have been necessary for him, while a minor, to change his domicile, and their testimony that such consent was never given is uncontradicted. Decedent, having taken advice of counsel, was himself aware of what would be necessary for him to make a will, and suggested in his letter to his uncle, W. N. Reynolds, on June 26, 1931, that his guardians change their residence or allow new guardians to be appointed. There the matter dropped.

Even if we assume in respondent's favor, however, that decedent could have changed his domicile, we can not find that he had any bona fide intent to do so. It is elementary that the acquisition of a domicile of choice involves actual physical presence at a dwelling place in an-

other state, coupled with the concurrent intent to make it a home. Intention involves the idea of fixity, of some degree of permanence in the new abode, and must be more than the mere intention to acquire a new domicile. Restatement, Conflicts §§ 15, 16, 18, 19. The concept of "home" in the conflict of laws, as distinguished from any other transitory dwelling place, and the factors to be given weight in determining whether any certain dwelling place comes within the definition, are set out fully in the Restatement, § 13, and need not be recited here. The Supreme Court, however, has examined the whole matter fully in a recent case which has certain similarities to this case. *Texas* v. *Florida*, 306 U. S. 398.

The decedent knew, on the advice of his lawyers, that his attempt to obtain a new domicile in New York would be futile, as his letter to his uncle in June 1931, already referred to, indicates. His widow testified that he had told her as much. He leased quarters in New York for a few months only in the summer of that year, and did not retain them after Elizabeth Holman, a professional singer whom he later married, left New York to go on tour. He apparently had no belongings in New York beyond his personal clothing. He wanted to acquire a new domicile for a special purpose—that is clear; but he did not want to acquire a new home, and the special intent to obtain the benefit of certain legal results which would flow from a change of domicile can not, as we have said, be considered as evidence of a general intent to change his permanent place of abode. We do not think that decedent had a bona fide intent to establish a new home in New York.

Even if this point could be conceded, however, the law governing the validity of the New York will over movables would be that of his domicile at death. See 2 Beale, op. cit. § 306.1, p. 1034; and cases there cited, which include many New York decisions. And New York was clearly not his domicile when he died in 1932. Decedent left New York in the fall of 1931 and never returned except for temporary purposes. His registration at a New York City hotel and at a New York City hospital where he went for treatment afterwards, gave Winston-Salem, North Carolina, as his residence; and he actually returned to Winston-Salem in May 1932 to live. That summer he contemplated taking a course in aviation in the fall at a New York college, but such an intent does not ordinarily work a change of domicile, and this appears to be the law of New York. 1 Beale, op. cit. § 22.8, p. 176. And in any event, decedent would not have acquired a New York domicile by going to a New York college until he entered that jurisdiction. Here he had leased an apartment in New York City for a term beginning in the fall of the year in which he died. When he died the only personalty which he had in New York was a watch left by his second wife for mending at a jeweler's there. Throughout the whole period before the making

of the will until his death he had rooms in the paternal house in North Carolina and practically all his belongings were in those rooms.

We do not enter here on all the secondary facts pertinent to discover decedent's intention, such as his frequent references to "Reynolda", the family farm in North Carolina, as home, for we think the facts already stated clearly establish that the decedent died domiciled in North Carolina, his domicile of origin, and that he never acquired a domicile elsewhere. It follows, therefore, that, since his capacity to exercise the power of appointment is dependent on the law of North Carolina, and since as a minor under that law he did not have the requisite capacity, no property passed by the exercise of the power of appointment within the meaning of the revenue act.

Since under North Carolina law, which we have held is the proper law to be applied under the accepted doctrine of conflict of laws, no property "passed" by the exercise of the power, we need not concern ourselves with any limitation on the disposition which the law of Maryland, as the *situs* of the trustee and the trust *res* might impose. See 2 Beale, op. cit. § 285.1, p. 1010. Nor need we inquire whether the power exercised would have been a "general power" in Maryland under the somewhat questionable doctrine of *Leser* v. *Burnet*, 46 Fed. 756. See Griswold, Powers and The Federal Estate Tax, 52 Harvard Law Review 929, 941, which would construe that phrase of the Federal statute in terms of local law, for that question has now been put at rest by *Morgan* v. *Commissioner*, 309 U. S. 78. It would seem, however, that if Maryland, rather than North Carolina, law were the proper law to determine the power's effect, its exercise in the circumstances here present would have been ineffective in view of the common law rule still holding in that jurisdiction, to the effect that marriage and birth of issue, including posthumous issue, works a revocation of the will. See *Karr* v. *Robinson*, 167 Md. 375; 173 Atl. 584; *Cunningham* v. *Cunningham*, 158 Md. 732, 735; 148 Atl. 444. In any event, the Circuit Court of Baltimore County in Maryland, in its decision in a proceeding to which all interested persons, including the executor named in the New York will and the administrator there appointed were constituted parties, by its decree entered March 12, 1936, held that the "alleged will was not effective or operative to dispose of or affect any of the property or estate held by the plaintiff as trustee under any of said instruments; but was altogether void and without effect as an exercise of any power of appointment or disposition which the said Zachary Smith Reynolds would have possessed or had, if he had attained lawful age at the time of his death."

We hold that under the Federal taxing statutes no property passed by decedent's exercise of his power of appointment.

We leave on one side until we shall have considered the second principal question raised—respondent's alternative contention based

on the doctrine of *Lyeth* v. *Hoey*, *supra*, that 37½ percent of the three trust estates was taxable as having passed to decedent's brother and sisters under the compromise settlement approved by the North Carolina court in right of their status as appointees of the power—since the pertinence of that doctrine is there raised again and need not be decided unless the respondent's second proposition shall be found untenable.

2. Respondent contends that the decedent's interest in the three trusts is includable under subsection 302 (a) of the Revenue Act of 1926, which provides that:

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death.

The resolution of this question depends first upon whether the provision was intended to include in the decedent's gross estate all and sundry property interests of the decedent existing at the moment of death not included under the several specific subsections which follow subsection (a); or for that matter, all interests of the decedent of every character, whether included or not under the following subsections. In the second place, assuming that subsection (a) is such a "catch-all" clause and intended by Congress to cover all interests in property at death bearing any cognate relation to the preceding phrase "gross estate", and that it does not merely subsume the subsections which follow, we must then determine whether decedent's interest in the several trusts at the time of his death was vested and not contingent or a mere expectancy, so as to constitute it part of his estate at death. Since the word "interest" connotes property rights which Congress has not otherwise defined except in the specific subsections which follow, we assume that it is to be construed in terms of local law.

The answer need not detain us long. We must suppose that Congress intended to exert its power to the full in enacting subsection (a), and to include in the gross estate any and every interest of the decedent at the time of his death. The other subsections do not limit, but enlarge, this definition by extending the act to other interests of the decedent which at common law or under the usual statutory law of the several states might not be included in the estate. The legislative history of these provisions from the first enactment of the tax in 1916 bears this out, and is so familiar that it need not be reviewed here. Nor can the legislative removal in the 1926 Revenue Act of the limiting definition originally imposed on this subsection, to which petitioner calls attention, be taken to limit in any way the subsection as it now stands or to constitute it a new enactment wider in scope than that

originally laid down, or make it retroactive in application. The courts' construction of the earlier section that the limiting definitions should be read conjunctively, see *United States* v. *Field*, 255 U. S. 257, led inevitably to the result that land in certain states was not includable in the gross estate, see *Crooks* v. *Harrelson*, 282 U. S. 55, and therefore made Congressional clarification of the section necessary, so that, in the language of the House Committee "the gross estate shall include *the entire interest* of the decedent at the time of his death in all the property." (Italics supplied.) 69th Cong., H. Rept. No. 1, p. 15. The only question, then, is whether decedent's interest in any or all of these three trusts, since no such interest was includable under any later specific subsection of the act, was a part of his gross estate under local law. If so, we think it would be a part of his gross estate under the Federal statute. We shall consider the several trusts separately.

(a) Respondent contends that the interest of decedent in his father's trust was vested. The lower court in the second North Carolina case (Superior Court of Forsyth County, North Carolina), in considering the intervening complaint of the State of North Carolina which set forth a claim for inheritance and estate taxes, found as a fact that the will of R. J. Reynolds and the will and deed of Katharine S. Johnston did not bequeath, devise, or confer to or upon decedent any vested interest in the various trust estates, but only gave him the right to receive payments from the income thereof. However, the court in the same proceeding authorized and directed the settlement of this claim of the state for the sum of $2,000,000. The only party to appeal from this part of the order of the lower court was the trustee, and its appeal did not allege error based upon the finding that decedent did not have a vested interest in the various trust properties. The Supreme Court of North Carolina affirmed the compromise of the tax claims of North Carolina, but did not consider the question of whether decedent received any vested interest in the various trust properties. The lower court in its order expressly pointed out: "This judgment is based upon and entered in conformity with the offer of settlement filed in this cause by Richard J. Reynolds, Mary Reynolds Babcock and Nancy Reynolds Bagley, and is entire and indivisible."

Petitioner asserts that the determination of the state court on this question is binding upon us and determinative of the issue, relying on *Blair* v. *Commissioner*, 300 U. S. 5; *Sharp* v. *Commissioner*, 303 U. S. 624 (reversing *Sharp* v. *Commissioner*, 91 Fed. (2d) 802) ; and *Freuler* v. *Helvering*, 291 U. S. 35. There are two peculiarities present in this case, however, which offer a possible distinction from the cited cases: (1) The judgment of the lower court was expressly stated to be "based upon and entered in conformity with" an offer of compromise, so that it is questionable whether any of the issues, although joined by the pleadings, were actually subject to litigation; (2) there is a glaring

inconsistency between the court's finding that decedent had no vested interest in the various trusts and its authorization of a payment to the State of North Carolina of $2,000,000 in settlement of a claim for inheritance taxes. Under the peculiar circumstances of this case, we consider it proper and advisable for us to consider the questions raised on their merits without being foreclosed from such inquiry by the rather anomalous finding and judgment of the Forsyth County (North Carolina) Court.

After a close study of the will of R. J. Reynolds, we are inclined to agree with respondent's contention that the interest of decedent vested in the trust created thereunder. But we do not agree with respondent's contention that decedent had a vested fee simple estate in one-third of the property included in the trusts created by the will of R. J. Reynolds. Respondent ignores the trust established for this property which is to continue until the year when decedent should attain the age of 28 years, characterizing it as an "administrative trust", and dismisses the limitation over in the event decedent died before such year intestate and without surviving issue by saying: "Where there is a clear gift of a fee, a limitation over is void for repugnancy, and therefore, cannot cut down a fee into a lesser estate." This latter statement and the cases cited by respondent in support of it rest on the common law rule with regard to conveyances. The rules interpreting wills, even at common law, gave effect to executory devises to carry out the testator's intent, even to the extent of allowing a limitation on a fee. Cro. Jac. 590; 10 Mod. 420; Fearne on Contingent Remainders, *passim;* 4 Kent Com. 257. As we have indicated, however, we do not agree with respondent's contention that decedent received the fee simple title to such property. Respondent lays great stress on certain parts of the granting clause in such will, set out in our findings, and would have us disregard other parts of the instrument. This we can not do, since it is axiomatic that a will, like any other instrument, must be construed as a whole, and all its provisions made effective if possible.

Construing the will of R. J. Reynolds in this way, we are of the opinion that decedent was not granted an estate in fee simple, but held, at most, an equitable estate for years, with a remainder in fee of the legal estate free from any trust. Upon his death prior to the vesting of the remainder and without having exercised the power of appointment, there were limitations over by executory devises contained in the will which made complete disposition of the property. The executory devise to his issue was on condition subsequent subject to another executory devise.

Under these circumstances, petitioner contends that, whether decedent's interest in his father's trust was vested or not, it was

defeasible at death, an "interest * * * which * * * was obliterated by that event", *May* v. *Heiner*, 281 U. S. 238. Cf. *Estate of William B. Field*, 22 B. T. A. 915. This is in accord with Treasury practice, for article 11 of Regulations 70, Revenue Act of 1926, provides: "Nor should anything be included on account of an interest or an estate limited for the life of the decedent." Article 13 of Regulations 80 makes the same statement. Petitioner also points out that on decedent's death all contingencies were provided for by the father's trust, so that in no event would anything pass from decedent unless under the exercise of his power of appointment, which we have held was ineffective to transfer his interest, but the whole would pass directly from the original testator, R. J. Reynolds, to remaindermen named in the original will. We agree with this conclusion, and would point out here that under the peculiar provisions of the testator's will, if the decedent should die under the age of 28 and without having exercised his power of disposition "but leaving issue him or her surviving", the decedent's share would remain in the trustee's hands for the benefit of such surviving children of decedent until decedent would have been 28, had he lived, "when the trust shall cease and the estate shall *then* become vested in his or her children, *then* surviving" [our italics]; with a limitation over, if the decedent should die without having either exercised the power or "without issue living at the termination of said trust, * * * on like trusts for my surviving children and the *then* living issue of my deceased children per stirpes * * *." It is obvious from this language that the remainder after decedent's interest was contingent and would not vest in any of his children who survived him until the day which would have been decedent's twenty-eighth birthday. This would have been a little over seven years after decedent's death. We call attention to this language, for it shows that the birth of issue to decedent did not entitle him to any greater estate than he would have had before, nor make any the less defeasible on his death before reaching the age of 28 any interest which he had held during life. His power of appointment, which gave him a complete power of testamentary disposition during life, did not, as we read the statutes, constitute an "interest" under subsection (a). That a subsequent subsection, (f), should treat it as taxable in certain circumstances we think is immaterial. We conceive that the word "interest", as used in subsection (a), refers to a transferable estate, and not something which, like a life estate or power, ceases altogether on the donee's death. If it includes anything which ceases at the decedent's death, the inclusion must be in express words. In any event, under our holding on the first point, since petitioner did not have any power of appointment which he could exercise before he was 21 so long as he remained domiciled in North Carolina, he could not, by reason

of its possession be said to have an "interest" includable in his gross estate.

We are of the opinion, therefore, that decedent's interest in the trust estate of his father, R. J. Reynolds, was defeasible in the event of his death; that the remainder thereafter passed by limitations in the original testator's will; and that, consequently, decedent had no interest therein at death properly includable in his gross estate for Federal estate tax purposes. As we shall point out later, our conclusion on this question is not affected by a consideration of the application of the rule in Shelley's case.

When we turn to the will of decedent's mother, Katharine S. Johnston, and the *inter vivos* trust created by her, we find the limitations very differently set out. Since the language used in both these instruments is the same in so far as decedent's interest and the limitations over are concerned, we quote only from the deed of trust:

The Safe Deposit & Trust Company of Baltimore as Trustee hereunder shall hold the share of each child for such child during its life, and upon its death shall distribute, transfer and deliver the same to and among, or hold the same for such person or persons, objects or purposes, in trust and otherwise, as such child shall by its Last Will nominate and appoint to take the same, and in default of such appointment shall distribute, transfer and deliver the same to the descendants of such child living at its death, per stirpes and not per capita, and in default of such appointment and in default of descendants of such child the said Trustee shall at its death divide and distribute the same among such of said children and their descendants as are then living, per stirpes and not per capita, but the shares of such of her said children as are then living shall be held by said Trustee in trust for them and upon the same trusts that their original shares are then held.

In the testamentary trust the second husband of the testator was included with her children and other descendants as a continuing remainderman. Otherwise there was no difference.

We have here a simple equitable estate for life in decedent, coupled with a complete power of testamentary disposition, with a fee simple in decedent's descendants living at his death, and a limitation over, in the contingency of no appointment and no issue surviving, to decedent's brother and sisters. On the birth of issue to decedent, the remainder would vest in his child subject only to be divested by its not surviving the decedent, or, in other words, a vested remainder in fee defeasible on condition subsequent.

Petitioner contends that in these circumstances the claim made by respondent that the decedent had an interest of calculable value, includable in his gross estate at his death, has "no possible application", since the decedent "had only an interest expressly limited to his life." If this last proposition, that decedent had only a life interest, is true, obviously that interest would be obliterated at his death, any remainder would pass directly from the settlor (or tes-

tator), nothing would descend from decedent, and there would be no "interest" includable in gross estate. Cf. *May* v. *Heiner, supra.* But the soundness of this proposition must be examined in the light of North Carolina property law which petitioner concedes, and we hold, controls the devolution. In the first place, there can be no question that decedent's estate vested immediately. In the second place, the remainder in decedent's daughter was vested and subject only to be divested in the event of her death before the decedent's. In the third place, if the rule in Shelley's case (1 Co. 104) applies, so that decedent's estate can be regarded as a fee tail in the ancestor (decedent), and not as a life estate in the ancestor and a remainder over in fee in the children, the state statute of 1784 will convert the ancestor's fee tail immediately into a fee simple. Sec. 1734, Michie's N. C. Code, Ann. (1935), p. 763. In other words, the decedent here would have had during life a presently vested fee simple estate, defeasible only on his death without issue surviving, which would be equal in value to the full amount of that portion of the trust *res* set aside by his mother's deed, in one instance, or by his mother's will, in the other, for his benefit; and this substantial amount would undoubtedly constitute a part of his gross estate as property transferred from him at his death.

The rule in Shelley's case as at common law, still obtains in North Carolina and has never been abolished. *Nichols* v. *Gladden,* 117 N. C. 497; 23 S. E. 459; *Dawson* v. *Quinnerly,* 118 N. C. 188; 24 S. E. 483. It applies to property devised as well as to property conveyed *inter vivos. Leathers* v. *Gray,* 101 N. C. 162; 7 S. E. 657. It is applied to property held in trust. 1 Bogert on Trusts, sec. 187, p. 522; 1 Perry on Trusts (7th ed.), sec. 358, p. 602; *Boyd* v. *Small,* 56 N. C. 39; *Williams* v. *Houston,* 57 N. C. 277. It applies generally to bequests of personalty, 1 Perry on Trusts, sec. 358, p. 603; *Hughes* v. *Nickles,* 70 Md. 484; 17 Atl. 398; *Seeger* v. *Leaken,* 76 Maine, 500; 25 Atl. 862; and no cases have come to our attention restricting the operation of the rule in North Carolina to realty. On the contrary this rule of interpretation of estates would seem to apply equally to personalty. See *Fairly* v. *Priest,* 56 N. C. 383; discussed in *Whitfield* v. *Garris,* 134 N. C. 24; 45 S. E. 904.

It remains to inquire whether the rule in Shelley's case is properly applicable to the facts here and, if so, the consequence which would flow therefrom. The rule was set out in *Hampton* v. *Griggs,* 184 N. C. 13; 113 S. E. 501, as follows:

* * * When an ancestor, by any gift or conveyance, taketh an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs in fee or in tail, the word "heirs" is a word marking out the bounds or describing the extent or quality of the estate conveyed to the ancestor, and not a word designating the persons who are to take the estate, other than by descent and as the beginners of a new inheritance.

The requirements for the application of the rule were stated in the same case as follows:

In the first instance, an estate of freehold in the ancestor or the first taker.

The ancestor must acquire the prior estate by, through or in consequence of the same instrument which contains the limitation to his heirs.

The word "heirs" or "heirs of the body" must be used in their technical sense, as importing a class of persons to take indefinitely in succession, from generation to generation, in the course marked out by the canons of descent.

The interest acquired by the ancestor and that limited to his heirs must be of the same character or quality; that is to say, both must be legal, or both must be equitable, else the two would not coalesce.

The limitation to the heirs must be of an inheritance, in fee or in tail, and this must be made by way of remainder.

See also Tiffany on Real Property (3d ed.), vol. a, sec. 346.

Turning our attention to the fourth requirement as stated above, there immediately presents itself the question of whether the interest acquired by decedent and that limited to his descendants under the will of Katharine S. Johnston were of the same character or quality. It is obvious that the interest acquired by the decedent was equitable. It seems clear that the interest limited to his descendants must be considered as legal. The only duty of the trustee as to them was to "distribute, transfer and deliver" to them the property held in trust. Immediately upon the death of decedent the trustees would hold the property subject to this obligation, and upon a dry or passive trust. By virtue of the Statute of Uses the descendants of the decedent would obtain the legal title to the property held upon such a use. *Cherry* v. *Power Co.*, 142 N. C. 404; 55 S. E. 287; *Bank* v. *Sternberger*, 207 N. C. 811; 178 S. E. 595. Therefore, this requirement for the application of the rule in Shelley's case is not complied with and the rule is not operative in the present proceeding with regard to decedent's interests under the will and deed of his mother. *Vogt* v. *Vogt*, 26 App. D. C. 46. This case was affirmed by the Supreme Court in *Vogt* v. *Graff*, 222 U. S. 404, on another ground, but the Court, in its opinion, used the following language: "Another condition of the application of the rule [the rule in Shelley's case] is that the particular estate and the estate in remainder must be of the same quality, both legal and both equitable." See also Kent's Commentaries, 12th ed., vol. IV, p. 238. *Payne* v. *Sale*, 2 Devereux & Battle's Equity Reports (N. C.), 455.

Since it is clear that this condition of the application of the rule has not been met, it is unnecessary to consider whether the other requirements for its application have been complied with.

We conclude that decedent had no interest at death in the trust estates created by his mother's will or deed properly includable in his gross estate for Federal estate tax purposes.

With regard to the interests created by the will of R. J. Reynolds, it is even more clear that the rule in Shelley's case has no application.

Decedent, at the time of his death, could only be considered, as we have shown, to have an equitable estate for years. The pertinent remainder created was to decedent's children surviving him. This remainder was a contingent legal interest and followed an equitable term for years. It is obvious that the words "issue then living" and "children" were not used by the testator in the sense of heirs generally.

We now consider respondent's argument that the case of *Lyeth* v. *Hoey*, 305 U. S. 188, supports his determination made herein. His brief mentions this decision twice. We quote these passages in full. On page 11 of his brief appears the following passage:

In view of the foregoing, the varied and conflicting claims and contentions of the parties in interest, and the ultimate composition entered into between the parties, it is also submitted that this case is controlled by the decision of the Supreme Court in *Lyeth* v. *Hoey, Col.* (1938) 305 U. S. 188.

On page 14 appears the following:

\* \* \* What has been stated as to the effect of the compromise settlement between the parties in interest as heirs at law, being controlled by the decision of the Supreme Court in *Lyeth* v. *Hoey, Colr., supra,* would apply with equal force to a compromise under the exercise of a power of appointment. Under such circumstances, the widow and issue of the decedent could only take by reason of the relationship and as heirs at law.

The case of *Lyeth* v. *Hoey, supra,* had to do with the Federal income tax and was concerned specifically with an interpretation of section 22 (b) (3) of the Revenue Act of 1932. The taxpayer in that case, was the heir at law of a decedent, who died testate. He filed proceedings contesting the validity of decedent's will. Subsequently, an agreement was entered into between taxpayer and the devisees under the will, whereby taxpayer was paid certain sums, and in return the will was permitted to be probated. It was held that the taxpayer received these sums because he was heir, and, therefore, they were exempt from the income tax by section 22 (b) (3).

It would seem necessary only to outline the nature of that case and the decision therein to make clear its irrelevancy to the situation we have for consideration in the present proceedings. This case involves the Federal estate tax, and, specifically, section 302 (a) and (f) of the Revenue Act of 1926. The questions before us, as stated by respondent in his brief, are whether the interest of the decedent in the *corpora* of the trusts set up under the wills of his father and mother and the trust created by his mother is to be included in his gross estate pursuant to section 302 (a) and (f) above referred to. We have heretofore held as a matter of law that they are not.

A compromise settlement was made by certain individuals whereby the trust properties subject to the equitable interests of decedent were divided. The claims of these individuals to this property had as possible bases the provisions present in the will of decedent's father

and the will and deed of his mother. It is true that the brother and sisters of decedent also had as a basis for their claims the purported will of decedent. However, the North Carolina court held, as we have held, that this will was invalid and that there was no valid exercise by decedent of any power of testamentary disposition. If the question before us involved the income tax liability of decedent's brother and sisters, then *Lyeth* v. *Hoey, supra,* might be pertinent. We do not, however, conceive that that case stands for a proposition that claimants of property in which, as a matter of law, decedent had no interest can, by a compromise agreement executed among themselves, increase decedent's gross estate by the amount of the value of such property. Cf. *Ithaca Trust Co.* v. *United States,* 279 U. S. 151; *Robbins* v. *Commissioner,* 111 Fed. (2d) 828.

Reviewed by the Board.

*Decision will be entered under Rule 50.*